**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Paisley Park Enterprises, Inc. and Comerica Bank & Trust, N.A. as Personal Representative for the Estate of Prince Rogers Nelson, | Court File No. 17-cv-1212 (WMW/TNL) |
| Plaintiffs, | |
| v. | **DEFENDANT BROWN & ROSEN, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS** |
| George Ian Boxill, Rogue Music Alliance, LLC, Deliverance, LLC, David Staley, Gabriel Solomon Wilson, Brown & Rosen, LLC and Sidebar Legal, PC, | |
| Defendants. | |

## INTRODUCTION

Defendant Brown & Rosen, LLC, submits this memorandum of law in support of its motion to dismiss the claims alleged against it in plaintiffs' Third Amended Complaint ("TAC") (ECF Doc. 262). Brown & Rosen is a two-member law firm in Massachusetts. The TAC makes four claims against it. All are based solely on legal services that Brown & Rosen performed in Massachusetts for its clients in California and Washington state. There is no nexus between those services and Minnesota; hence, the Court lacks personal jurisdiction over Brown & Rosen. *See* Fed. R. Civ. P. 12(b)(2).

The claims against Brown & Rosen should also be dismissed for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6). All four claims are based on Brown & Rosen's legal advice in March of 2017 to its own clients regarding several musical compositions which defendant George Ian Boxill claimed to have co-authored with Prince and for which Boxill

registered copyrights showing himself and Prince as co-authors. Plaintiffs did not register their own copyrights in the works, showing Prince as the sole author, until May of 2018. They have not invalidated the earlier copyrights showing Boxill as a co-author.

Through artful pleading, plaintiffs have attempted to disguise what is in substance an impermissible legal malpractice claim against another party's lawyer. *See McDonald v. Stewart,* 289 Minn. 35, 40, 182 N.W.2d 437, 440 (1970) (holding attorney is generally immune from liability to third parties for actions arising out of professional relationship). Count One, alleging a right to enjoin Brown & Rosen from distributing the musical works, fails for lack of an allegation that Brown & Rosen participated – other than in its role as an attorney acting for a client – in any prior allegedly impermissible distribution of the musical works. Count Four, alleging tortious interference with contract, is not a viable claim against an attorney acting in that role for a client under longstanding Minnesota law. Count Six alleges indirect copyright infringement of certain music, which is not a viable claim because plaintiffs did not register a copyright on the music until long after the alleged infringing conduct and so Brown & Rosen could not have had "actual knowledge" of infringing conduct. Finally, Count Fourteen alleges a right to a declaration that plaintiffs' copyrights on the music are superior to those of defendant Deliverance, LLC, which is not a viable claim as to Brown & Rosen because it does not claim a legally adverse interest to plaintiffs and hence no "actual controversy" exists. Brown & Rosen must be dismissed from this action for lack of personal jurisdiction and because the claims against it lack merit.

## STATEMENT OF FACTS[1]

### I.   Parties

Brown & Rosen is a two-member Massachusetts law firm. (TAC ¶ 17; Brown Dec. ¶ 1). Brown & Rosen and Christopher Brown, a principal of the law firm, represented defendant George Ian Boxill prior to and during the first few months of this litigation, generally from approximately July 2016 until January 9, 2018. (Brown Dec. ¶ 2; *see also* Wilson Dec. ¶ 2). It also represented defendant Rogue Music Alliance, LLC ("RMA") prior to and during the first few months of this litigation, from approximately October 2016 until January 9, 2018. (Brown Dec. ¶ 2; *see also* Wilson Dec. ¶ 2). Finally, it represented defendant Deliverance, LLC ("Deliverance") before and during the first few months of this litigation, from fall 2016 until January 9, 2018. (Brown Dec. ¶ 3). Brown & Rosen's involvement in the events described in the TAC was always in its capacity as an attorney representing its clients. (Brown Dec. ¶ 5-7; Wilson Dec. ¶¶ 5-6).

The remaining defendants are as follows:

- Boxill is an individual resident of California and sound engineer who, over a period of years, worked with Prince Rogers Nelson ("Prince"). (TAC ¶¶ 12).

- RMA is a Washington company. (TAC ¶ 13).

- Deliverance is a California company. (TAC ¶ 14).

---

[1] Facts recited herein which are taken from plaintiffs' TAC may be assumed to be true for purposes of this motion but for no other purpose.

- David Staley is an individual resident of Washington State and is an owner and manager of RMA. (TAC ¶ 15).

- Gabriel Solomon Wilson is an individual resident of Washington State and is an owner and manager of RMA and a manager of Deliverance. (TAC ¶ 16).

- Sidebar Legal, PC, is a California law firm whose president is Matthew A. Wilson. (TAC ¶ 18; Wilson Dec. ¶ 1).

Plaintiff Comerica Bank & Trust, N.A. as Personal Representative for the Estate of Prince Rogers Nelson ("Estate"), is the court-appointed personal representative of the estate of Prince, who died in Minnesota on April 21, 2016. (TAC ¶ 11). Plaintiff Paisley Park Enterprises, Inc. ("Paisley Park"), is a Minnesota company that Prince owned during his lifetime and is now owned by the Estate. (TAC ¶ 10). This memorandum refers to the Estate and Paisley Park collectively as "plaintiffs."

## II.   Boxill's work with Prince

Boxill worked with Prince in various capacities over the course of several years. In 2004, when he was hired as a consultant, it is alleged that he signed a Confidentiality Agreement, which he disputes. The Confidentiality Agreement contained a provision in which Boxill agreed that all records and other physical material related to his work with Prince was the sole property of Paisley Park, and that he would not use any such property and would return it to Paisley Park upon request. (TAC ¶ 27). It also included a provision in which Boxill agreed not to disclose to any third party any information regarding Paisley Park obtained in the course of his employment as a consultant with Paisley Park. (TAC ¶ 28).

4

In 2006, Boxill contends he engaged in joint authorship work on five music tracks for Prince: *Deliverance*, and four tracks comprising *Man Opera* (*I Am*, *Touch Me*, *Sunrise Sunset*, and *No One Else*) (the "Prince Works"). (TAC ¶ 6). Boxill retained copies of the Prince Works and, after Prince's death, created derivative works of the Prince Works. (TAC ¶ 7). Boxill obtained copyrights (jointly with Prince) on *Deliverance* on March 10, 2017, and *Man Opera* on March 30, 2017. (Simpson Dec. Exs. A, B). According to the Plaintiffs, he, along with RMA and the LLC, released these derivative works on April 18, 2017. (TAC ¶ 62).

### III.   Brown & Rosen's involvement

Brown & Rosen was hired by Boxill, and later RMA and Deliverance, to provide legal services. (Brown Dec. ¶¶ 2-3). In September 2016, Brown in conjunction with counsel for Plaintiffs, Paisley Park and the Estate, jointly negotiated for the inclusion of the song "Deliverance" to be included on the movie soundtrack for *Birth of Nation*, with Atlantic Records. (Brown Dec. ¶ 4). At no time did Paisley Park or the Estate object to Boxill's claims of joint authorship during these negotiations. (Brown Dec. ¶ 4). The Estate ultimately declined to complete the deal with Atlantic Records as the advance offered was allegedly not sufficient for the heirs. (Brown Dec. ¶ 4). In March 2017, in response to a request from its clients, Brown & Rosen issued a legal opinion letter opining on Boxill's status as a "joint author" of the Prince Works. (Brown Dec. ¶ 5; Brown Dec. Ex. A; *see* TAC ¶ 105 (referring to Brown & Rosen's "legal opinion letter[]"; *see also id.* ¶¶ 54-55 (referring to Brown & Rosen's March 16, 2017 letter); Wilson Dec. ¶ 5 (describing Brown & Rosen's letter as "express[ing] Mr. Brown's legal opinions regarding joint authorship"

5

and stating that the letter and all related communications were legal services). Before producing this letter, Brown & Rosen obtained a signed affidavit from Boxill purporting to lay out all of the necessary facts to determine whether he was a joint author of the Prince Works. (Brown Dec. ¶ 5; Brown Dec. Ex. B). Boxill did not disclose the Confidentiality Agreement. (*See* Brown Dec. Ex. B). Brown & Rosen issued this letter on March 16, 2017. (Brown Dec. ¶ 5; Brown Dec. Ex. A; Wilson Dec. ¶ 5).

On March 21, 2017, Plaintiffs provided a copy of the Confidentiality Agreement to Brown & Rosen. (TAC ¶ 37; Brown Dec. ¶ 6; *see* Brown Dec. Ex. C; TAC ¶ 36). Plaintiffs also demanded a halt to the release of the Prince Works, and their immediate return to the Estate. (TAC ¶¶ 36, 60). Plaintiffs obtained their own copyrights on *Deliverance* and *Man Opera* on May 25, 2018. (Simpson Dec. Exs. C, D).

## IV.   Deliverance LLC

Deliverance was formed in October 2016 and has an operating agreement effective as of January 2017. (Wilson Dec. ¶ 3; Simpson Dec. Ex. E). Deliverance is comprised of three unitholders: Boxill, RMA, and Sidebar Legal. (Simpson Dec. Ex. E). There is a line on the list of unitholders for Christopher Brown, but he never signed the agreement. (Simpson Dec. Ex. E; Brown Dec. ¶ 3; *see* Wilson Dec. ¶ 4 (stating neither Brown nor Brown & Rosen were ever members, owners, etc. of Deliverance)). The schedule of unitholders also allocates 500 units of Deliverance to Brown, but, in fact, he never received any units of Deliverance. (Simpson Dec. Ex. E; Brown Dec. ¶ 3; *see* Wilson Dec. ¶ 4). Neither Brown & Rosen nor Chris Brown has any financial interest in Deliverance. (Brown Dec. ¶ 3; *see* Wilson Dec. ¶ 4).

6

**ARGUMENT**

I.  **Plaintiff's claims against Brown & Rosen should be dismissed for lack of personal jurisdiction.**

   A. **Standard of review**

Rule 12(b)(2) of the Federal Rules of Civil Procedure provides that a party may move to dismiss claims for lack of personal jurisdiction. To survive a 12(b)(2) motion to dismiss, the plaintiff must plead sufficient facts to support a reasonable inference that the defendant can be subjected to personal jurisdiction. *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015). An action should be dismissed "if the evidence, viewed in the light most favorable to [the plaintiff], is sufficient to support a conclusion that the exercise of personal jurisdiction over [the defendant] is proper." *Id*. Conclusory allegations devoid of a factual foundation do not suffice. *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1073-74 (8th Cir. 2004).

The court may only exercise personal jurisdiction over a nonresident to the extent that the exercise is authorized by Minnesota's long-arm statute and consistent with the United States Constitution's Due Process Clause. *Minn. Mining & Mfg. Co. v. Nippon Carbide Indus. Co., Inc.*, 63 F.3d 694, 696-97 (8th Cir. 1995). Minnesota has interpreted its long-arm statute to authorize personal jurisdiction "as far as the Due Process Clause of the federal constitution allows." *Valspar Corp. v. Lukken Color Corp.*, 495 N.W.2d 408, 411 (Minn. 1992). Due process requires sufficient "minimum contacts" with the forum state so as not to offend "traditional notions of fair play and substantial justice." *Minn. Mining & Mfg.* at 697 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Therefore, the

Court need only determine whether exercise of personal jurisdiction here would comport with due process. *Id.*

### B. Plaintiffs cannot establish specific personal jurisdiction of Brown & Rosen.

Plaintiffs allege specific personal jurisdiction over Brown & Rosen. Specific jurisdiction is "jurisdiction over causes of action arising from or related to the defendant's actions in the forum state." *Wessels, Arnold & Henderson v. National Medical Waste, Inc.,* 65 F.3d 1427, 1432 n. 4 (8th Cir.1995). Unlike general jurisdiction, which exists where a defendant's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State," *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014), specific jurisdiction only exists where the defendant's contacts with the state give rise to the tort alleged.

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014) (quoting *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 775 (1984)); *see Burlington Indus*., *Inc*. *v*. *Maples Indus*., *Inc*., 97 F.3d 1100, 1102 (8th Cir. 1996) (stating that courts look to "(1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties"). "First, the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Walden*, 570 U.S. at 284 (emphasis in original) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985)). Second, the "analysis looks to the defendant's contacts with the forum State itself, not the

defendant's contacts with persons who reside there." *Id.* In other words, "due process is satisfied if the defendant has purposely directed its activities at forum residents, and the litigation results from injuries arising out of, or relating to, those activities." *Burlington Indus., Inc.*, 97 F.3d at 1102.

Plaintiffs allege three claims against Brown & Rosen: (1) tortious interference with contract (Count Four); (2) indirect copyright infringement (Count Six); and declaratory judgment (Count Fourteen). (*See generally* TAC). For reasons discussed in greater detail later, these claims against Brown & Rosen fail on the merits. But plaintiffs cannot demonstrate specific personal jurisdiction over Brown & Rosen arising out of these claims.

>    1.    **To the extent Brown & Rosen has any contacts with Minnesota, it is as a former attorney in connection with this litigation, which cannot confer personal jurisdiction in this matter.**

As a primary issue, all of the allegations against Brown & Rosen by plaintiffs arise in the context of Brown & Rosen's attorney-client relationship with other defendants in this action. Although plaintiffs do not explicitly acknowledge that Brown & Rosen was acting in its capacity as an attorney providing legal advice to its clients, that was, in fact, the function of Brown & Rosen's March 16, 2017 opinion letter that allegedly gives rise to plaintiffs' claims against Brown & Rosen. And as is directly dispositive of the specific personal jurisdiction issue, Brown & Rosen's alleged liability arises out of its provision of professional legal services in advising its former clients, California and Washington state residents, as to Boxill's status and rights as a joint author of the Prince Works. While those former clients have unsuccessfully challenged personal jurisdiction in this case, (*see* ECF Doc. 128), Brown & Rosen's involvement is at least one level further removed from the

activities of those parties that this Court previously determined was directed at this forum. Brown & Rosen provided legal advice to certain non-Minnesota clients regarding joint authorship of the Prince Works. That activity does not give rise to specific personal jurisdiction in Minnesota.

For specific personal jurisdiction to exist, a defendant must have a relationship with the forum state, and that relationship "must arise out of contacts that the defendant *himself* creates with the forum State." *Walden*, 571 U.S. at 284 (emphasis in original) (quotation omitted). In other words, "the defendant-focused 'minimum contacts' inquiry [cannot be satisfied] by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Id.*

Brown & Rosen itself has no contacts with Minnesota that gave rise to these alleged torts.[2] Its principal place of business is Massachusetts. (TAC ¶ 17). Its attorneys practice primarily in Massachusetts and none is licensed to practice law in Minnesota state or federal court. (Brown Dec. ¶¶ 1, 8). Christopher Brown was admitted *pro hac vice* in

---

[2] The TAC implicitly concedes that Brown & Rosen does not have continuous and systematic contacts with Minnesota such that it is subject to general personal jurisdiction. (*See also* Brown Dec. ¶ 8). A lawyer's representation of a client in the forum state is not enough to confer general personal jurisdiction where the lawyer was not licensed to practice law in the forum state, maintained no offices in the forum state, was not registered or licensed to do business in the forum, and generated *de minimus* revenue from the forum. *See Trierweiler v. Croxton and Trench Holding Corp.*, 90 F.3d 1523, 1533 (10th Cir.1996) (forum lacked general jurisdiction over non-resident law firm that represented 24 forum residents during relevant period); *Wien Air Alaska v. Brandt*, 195 F.3d 208, 213 (5th Cir.1999) (when a lawyer represents a client in another forum that in itself does not confer jurisdiction if the claim does not arise from the lawyer's contacts with the forum); *Porter v. Berall*, 293 F.3d 1073, 1076–77 (8th Cir.2002); *Pelican Trading Inc. v. Proskauer Rose LLP*, No. 2:09-CV-01744-KJD, 2010 WL 3905750, at *3 (D. Nev. Sept. 28, 2010).

Minnesota in this matter alone. (*See* Brown Dec. ¶ 8; Doc. 35). As respects the specific claims here, attorney Chris Brown was contacted by his former clients, who reside or have principal places of business in California or Washington state, to provide services including a legal opinion as to Boxill's rights as a joint author of the subject works. Brown prepared that opinion based on information from his client. At no point did this rendering of a legal opinion create contacts with Minnesota.

### 2.  Brown & Rosen did not engage in intentional torts aimed at Minnesota so as to establish specific personal jurisdiction here.

Plaintiffs have alleged intentional torts against Brown & Rosen. Where the question of personal jurisdiction arises in an intentional-tort context, this Court applies the factors laid out in *Calder v. Jones*, 465 U.S. 783 (1984). *See Griffis v. Luban*, 646 N.W.2d 527, 535 (Minn. 2002). The *Calder* test

> requires the plaintiff to show that: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm caused by that tort in the forum such that the forum state was the focal point of the plaintiff's injury; and (3) the defendant expressly aimed the tortious conduct at the forum such that the forum state was the focal point of the tortious activity.

*IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265-66 (3d Cir. 1998). The Eighth Circuit "construe[s] the *Calder* effects test narrowly, and holds that, absent additional contacts, mere effects in the forum state are insufficient to confer personal jurisdiction." *Johnson v. Arden*, 614 F.3d 785, 797 (8th Cir. 2010). To satisfy the third prong, the plaintiff must show that "the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum." *IMO Indus., Inc.*, 155 F.3d at

266. Even assuming plaintiffs could establish the first two elements of the *Calder* test, they cannot establish this third element.

Brown & Rosen's legal opinion letter, the issuance of which constitutes the allegedly tortious conduct forming the basis for plaintiffs' allegations, was not "aimed" at Minnesota. The letter was issued in Massachusetts and "aimed" at Brown & Rosen's clients in California and Washington, and opined regarding Boxill's joint-author status based on information Boxill had provided. Brown & Rosen did not distribute the letter to any wider audience, and plaintiffs have not identified any person in Minnesota who (1) saw the letter, or (2) who relied on its contents. Plaintiffs' mere presence in Minnesota does not show that Brown & Rosen "expressly aimed the tortious conduct at the forum such that the forum state was the focal point of the tortious activity."

Plaintiffs may argue that Brown & Rosen contacted them in 2016 and 2017 to discuss matters related to this litigation, and specifically to negotiate regarding commercial use of the Prince Works. But the claims do not arise out of those contacts. Further, "[c]ontact by phone or mail is insufficient to justify exercise of personal jurisdiction under the due process clause." *Porter v. Berall*, 293 F.3d 1073, 1075–77 (8th Cir. 2002) (holding no personal jurisdiction in Missouri over Connecticut lawyers). And as the Supreme Court has said, minimum contacts are determined by looking "to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden*, 571 U.S. at 285. Communicating briefly with Plaintiffs "cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him."

*Id.* at 286. Brown & Rosen's "relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction"; it cannot be subject to specific personal jurisdiction based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Id.* (quoting *Burger King,* 471 U.S., at 475). Because its attorney-client relationship with California and Washington residents subject to jurisdiction in Minnesota comprises the whole of Brown & Rosen's connection with Minnesota, it is not subject to personal jurisdiction here.

Plaintiffs may also argue that Brown & Rosen was a participant in its client's allegedly tortious conduct, subjecting it to personal jurisdiction in Minnesota. This argument is without merit. First, although plaintiffs artfully avoid directly acknowledging the relationship between Brown & Rosen and its former clients, Brown & Rosen is a law firm, hired by its former clients to render legal opinions. (Brown Dec. ¶¶ 2-3, 5, 7-8; Wilson Dec. ¶¶ 2, 4-5; *see* TAC ¶ 105). This cannot subject it to liability to any third parties, *see McDonald v. Stewart*, 289 Minn. 35, 40, 182 N.W.2d 437, 440 (1970), and cannot give rise to specific personal jurisdiction here. Second, although plaintiffs assert Brown & Rosen has a financial interest in Deliverance, the documents embraced by the pleadings show that Brown & Rosen has no legal or financial interest in Deliverance, LLC and did not participate in any of its former clients' alleged tortious activities.

Plaintiffs reach this conclusion by proffering two false premises. First, they refer to Chris Brown, a principal at Brown & Rosen, and Brown & Rosen interchangeably. If plaintiffs acknowledged that Brown & Rosen and Chris Brown were acting as attorneys,

this imprecision would be unremarkable. Instead, plaintiffs attempt to impute alleged *personal* liability of Chris Brown (an alleged member of Deliverance) to the law firm.

This leads to the second problem with plaintiffs' argument. Plaintiffs take this blurring of lines to the extreme and aver that Brown & Rosen is a member of Deliverance, LLC. This is patently false. The LLC agreement indicates an allocation of 500 shares to Christopher Brown (not Brown & Rosen), and contains a line for Christopher Brown's signature, with no reference to Brown & Rosen. As a result, Brown & Rosen is not even arguably a member of Deliverance. Moreover, Chris Brown is not a member of Deliverance. While the other Common Unit Holders (Boxill, RMA by Gabriel Wilson, and Sidebar Legal by Matthew Wilson) signed the agreement, Chris Brown never signed it and never received any shares of Deliverance. (Brown Dec. ¶ 3; Simpson Dec. Ex. E; *see* Wilson Dec. ¶ 4). In other words, plaintiffs attempt to artfully plead a legal malpractice claim where they have no standing to do so by obscuring the fact that Brown & Rosen was acting in its capacity as an attorney and it does not own any portion of Deliverance.

Brown & Rosen's contacts with Minnesota, to the extent it had any, were indirect and minimal. It did not itself create any contacts with Minnesota, and its legal opinion letter to its clients was not aimed at Minnesota. Brown & Rosen did not interact with Minnesota such that it would have any expectation of being haled into court here. Plaintiffs cannot establish specific personal jurisdiction over Brown & Rosen, therefore their claims must be dismissed. *See* Fed. R. Civ. P. 12(b)(2).

II.     **Plaintiffs' claims against Brown & Rosen should be dismissed for failure to state a claim on which relief can be granted.**

A.     **Standard of review**

In addition to failing for lack of personal jurisdiction, Plaintiffs' allegations against Brown & Rosen also fail to state claims on which relief can be granted and should be dismissed. *See* Fed. R. Civ. P. 12(b)(6). When considering such a motion, the Court assumes the allegations in the complaint are true, but "the complaint must contain sufficient facts, as opposed to mere conclusions, to satisfy the legal requirements of the claim to avoid dismissal." *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007) (quoting *DuBois v. Ford Motor Credit Co.,* 276 F.3d 1019, 1022 (8th Cir. 2002)); *see Loeffler v. City of Anoka*, 79 F. Supp. 3d 986, 991–92 (D. Minn. 2015) ("[A]lthough a complaint need not contain 'detailed factual allegations,' it must contain facts with enough specificity 'to raise a right to relief above the speculative level.'") (quoting *United States ex rel. Raynor v. Nat'l Rural Utils. Coop. Fin., Corp.,* 690 F.3d 951, 955 (8th Cir. 2012)).

"Though matters outside the pleadings may not be considered in deciding a Rule 12 motion to dismiss, documents necessarily embraced by the complaint are not matters outside the pleading." *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (quotation omitted). Documents embraced by the complaint are "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleadings," and include "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint

whose authenticity is unquestioned." *Id.*; *see also Levy*, 477 F.3d at 991 (stating that, on a motion under Rule 12(b)(6), the court is "not precluded in [its] review of the complaint from taking notice of items in the public record").

### B. Plaintiffs' tortious interference with contract claim against Brown & Rosen fails as a matter of law.

Plaintiffs allege a claim of tortious interference with contract against Brown & Rosen (Count Four). (TAC ¶¶ 83-94). Plaintiffs' specific allegation is that Brown & Rosen tortiously interfered with the Confidentiality Agreement by providing a legal opinion to its clients regarding joint ownership of the Prince Works. This claim should be dismissed because it fails to state a claim on which relief may be granted.

#### 1. Brown & Rosen was acting in its capacity as an attorney representing its client and therefore cannot be liable to third parties for advice it gave within the scope of that relationship.

As a preliminary matter, Brown & Rosen was acting in its capacity as an attorney when it provided the advice that the TAC alleges induced Boxill to breach the Confidentiality Agreement. (*See* Brown Dec. Ex. A; TAC ¶ 105 (referring to Brown & Rosen's issuance of a "legal opinion letter")). Under well-established Minnesota law, "an attorney acting within the scope of his employment as attorney is immune from liability to third persons for actions arising out of that professional relationship." *McDonald v. Stewart*, 289 Minn. 35, 40, 182 N.W.2d 437, 440 (1970); *see Rucker v. Schmidt*, 768 N.W.2d 408, 411 (Minn. App. 2009), *aff'd*, 794 N.W.2d 114 (Minn. 2011); *Schuler v. Meschke*, 435 N.W.2d 156, 163 (Minn. App. 1989). Minnesota has held this to be true even in a case where a third party alleges that an attorney tortiously interfered with a contract

while working in the scope of the attorney-client relationship. *See McDonald*, 289 Minn. at 40, 182 N.W.2d at 440. Were the law otherwise, every breach of contract action involving the advice of an attorney would automatically become a tort action against the breaching party's lawyer – clearly an untenable result, and one which Minnesota courts do not countenance.

As mentioned earlier, plaintiffs never directly acknowledge the relationship between Brown & Rosen (and Chris Brown, a principal of the law firm) and the original defendants in this matter (Boxill, RMA, and Deliverance). In fact, Brown & Rosen was hired in its capacity as an attorney to provide legal services including an opinion as to the joint-authorship of the Prince Works. It obtained an affidavit from Boxill, and based its legal opinion on that information and other information, including Boxill's copyright.[3] Plaintiffs neither acknowledge the attorney relationship directly, nor do they allege that Brown & Rosen was acting outside its capacity as an attorney. As a result of that relationship being the context in which Brown & Rosen provided its advice, plaintiffs' cannot maintain its tortious interference with contract claim against Brown & Rosen. This claim must be dismissed.

---

[3] 17 U.S.C. § 410(c) states that "[a] certificate of registration is prima facie evidence of the validity of a copyright," which permitted Brown & Rosen to rely on Boxill's registered copyright as evidence of his authorship.

### 2. Plaintiffs' allegations show that Brown & Rosen had no actual knowledge of the Confidentiality Agreement at the time it provided its allegedly interfering legal opinion.

Plaintiffs' tortious interference claim also fails on the facts. "A cause of action for tortious interference with contract has five elements: '(1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) intentional procurement of its breach; (4) without justification; and (5) damages.'" *Sysdyne Corp. v. Rousslang*, 860 N.W.2d 347, 351 (Minn. 2015) (quoting *Furlev Sales & Assocs., Inc., v. N. Am. Auto. Warehouse, Inc.,* 325 N.W.2d 20, 25 (Minn. 1982)). Plaintiffs' claim fails on the second and third elements and must be dismissed.

The contract that plaintiffs' allege Brown & Rosen interfered with is the Confidentiality Agreement. To the extent Brown & Rosen had any opportunity to tortiously interfere with that contract, such interference would have occurred when Brown & Rosen issued its legal opinion letter—March 16, 2017. Plaintiffs implicitly concede that Brown & Rosen learned of the existence of the Confidentiality Agreement on March 21, 2017— *after* Chris Brown wrote the March 16, 2017 opinion letter. (*See* TAC ¶ 84). As a result, Plaintiffs further implicitly concede that they cannot establish the second element of a tortious interference with contract claim: Brown & Rosen had *no knowledge* of the contract at the time it allegedly procured its breach.

### 3. Plaintiffs' allegations show no intentional procurement of any breach after Brown & Rosen learned of the Confidentiality Agreement.

Plaintiffs' tortious interference claim also fails on the third element: the intentional procurement of the contract's breach. Because Brown & Rosen did not know about the

18

Confidentiality Agreement until after it produced its legal opinion letter, plaintiffs must allege an action that amounts to intentional procurement of the breach *after* March 21, 2017. The only allegation plaintiffs make that falls into this category is that, after that date, Brown & Rosen "represented to third parties that Defendant Boxill had the right to release the Deliverance EP." (TAC ¶ 87). This allegation fails to establish intentional procurement of the breach for two reasons.

First, until Plaintiffs obtained their copyrights on the Prince Works on May 25, 2018, Boxill (as co-author with Prince) was the only person who held any certificate of registration of copyright on those works. (Simpson Dec. Exs. A, B; *see id.* at Exs. C, D). A certificate of registration is prima facie evidence of the validity of a copyright. 17 U.S.C. § 410(c); *see Taylor Corp. v. Four Seasons Greetings LLC*, 171 F. Supp. 2d 970, 972 (D. Minn. 2001), *aff'd,* 315 F.3d 1039 (8th Cir. 2003). As a result, even if Brown & Rosen did as Plaintiffs allege and "represented to third parties that Defendant Boxill had the right to release the Deliverance EP," that representation would have been legally correct. *See id.* Plaintiffs do not allege that Brown & Rosen had any reason to doubt the validity of Boxill's copyright registration or his claim of joint authorship as of the date Brown & Rosen issued its opinion letter.

Second, plaintiffs allege that Brown & Rosen represented this information to third parties, but it does not identify any third parties to whom Brown & Rosen made this representation. Plaintiffs do not identify anyone other than Brown & Rosen's clients who saw the March 16, 2017 letter, much less anyone who relied on its contents as "proof" that

Boxill had the right to release the Deliverance EP. Quite simply, there is no allegation of a new breach of the Confidentiality Agreement after Brown & Rosen became aware of it.

Third, plaintiffs do not allege that Brown & Rosen caused Boxill to breach the Confidentiality Agreement. Instead, Plaintiffs allege that Brown & Rosen's letter induced third parties to buy *Deliverance* from Boxill, and *this* forms the basis for their tortious interference with contract claim. (*See* TAC ¶¶ 87, 88, 90). But this allegation does not support a tortious interference with contract claim, because the contract allegedly breached was the Confidentiality Agreement—the third parties did not breach any contract as a result of the letter. Moreover, there is no claim that Brown & Rosen induced Boxill to breach the Confidentiality Agreement after March 21, 2017—when it learned of the agreement—only that the letter was allegedly used to induce third parties to buy *Deliverance*. This cannot form the basis for Plaintiffs' tortious interference with contract claim, which should be dismissed for failure to state a claim on which relief can be granted. Plaintiffs' tortious interference claim fails on its face. Plaintiffs cannot recover against an attorney for advice it gave to its client in its capacity as an attorney. Plaintiffs have not sufficiently alleged that Brown & Rosen had knowledge of the Confidentiality Agreement at the time of the conduct that allegedly breached the contract or that Brown & Rosen induced Boxill to breach the Confidentiality Agreement. Count Four should be dismissed.

**C. Plaintiffs' indirect copyright infringement claim fails as a matter of law.**

Plaintiffs also fail to state a claim for indirect copyright infringement (Count Six). This claim is based on plaintiffs' assertion that Brown & Rosen's legal opinion letter "induced, caused, and materially contributed to the infringement of Plaintiffs' copyrights

in the Prince Works." (TAC ¶ 104). Plaintiffs appear to be alleging a theory of contributory infringement. (*See* TAC ¶ 105). Contributory infringement exists where "one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a 'contributory' infringer." *Gershwin Pub. Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971); *see Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) ("One infringes contributorily by intentionally inducing or encouraging direct infringement."). Plaintiffs have not adequately pleaded a claim for contributory infringement of copyright.

> **1.    Boxill held a registered copyright on the Prince Works at the time Brown & Rosen wrote its legal opinion letter; Plaintiffs do not allege that they held any registered copyright at that time.**

Plaintiffs argue that, notwithstanding Boxill's registrations on the Prince Works, they had a superior unregistered copyright that Brown & Rosen indirectly infringed on when it issued its March 16, 2017 letter. At the time of the alleged inducement—March 16, 2017, when Brown & Rosen sent its opinion letter—plaintiffs did not hold any registered copyright on the subject material independent of Boxill. Only Boxill held registered copyrights on the Prince Works until May 2018. Under the Copyright Act, "[t]he legal or beneficial owner of an exclusive right under a copyright is entitled, subject to the requirements of section 411, to institute an action for any infringement of that particular right committed *while he or she is the owner of it*." 17 U.S.C. § 501(b); *see also* 17 U.S.C. § 412 ("In any action under this title, . . . no award of statutory damages or of attorney's fees, as provided by sections 504 and 505, shall be made for—(1) any infringement of copyright in an unpublished work commenced before the effective date of its registration;

or (2) any infringement of copyright commenced after first <u>publication</u> of the work and before the effective date of its registration, unless such registration is made within three months after the first <u>publication</u> of the work."). "[T]he certificate of a registration . . . of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c).

The alleged infringing act was the release of *Deliverance*, which occurred in April 2017, and the only action Brown & Rosen took with respect to that release was issuance of the legal opinion letter on March 16, 2017. (TAC ¶ 62; *see also id.* at ¶ 59). Plaintiffs did not obtain a registration on the copyright on the subject works until May 25, 2018. (TAC ¶ 172; Simpson Dec. Exs. C, D). Based on the information Brown & Rosen had at the time it issued it letter, its opinion was accurate because it did not know about the Confidentiality Agreement and Boxill held a registered copyright on *Deliverance*. Because plaintiffs do not allege any infringement *while they held registered copyrights in the Prince Works*, they cannot show that Brown & Rosen had actual knowledge of their alleged *sole* copyright, and there can be no claim for copyright infringement, direct or indirect. As a result, Count Six must be dismissed.

### 2.   Plaintiffs do not allege that Brown & Rosen had actual knowledge of allegedly infringing acts.

Second, even if Plaintiffs could maintain a copyright infringement claim for an alleged infringement that occurred before they held a copyright, this claim also fails because plaintiffs have not pleaded any facts demonstrating that Brown & Rosen had actual knowledge of the infringing activity. They allege that they sent an email to Brown & Rosen

on March 21, 2017, purporting to inform them that Boxill did not hold any rights to the subject works. (TAC ¶¶ 36, 37, 84). But this email does not put Brown & Rosen on notice of copyright infringement because it does not state that plaintiffs had any registered copyright on the subject works.[4]

"Actual knowledge" in the context of contributory copyright infringement requires conveying specific information that identifies the infringing activity. *See A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1021 (9th Cir. 2001), *as amended* (Apr. 3, 2001) (holding that, where a defendant "learns of specific infringing material available on his system and fails to purge such material from the system, the [defendant] knows of and contributes to direct infringement"). But "absent any specific information which identifies infringing activity, a [defendant] cannot be liable for contributory infringement merely because [its allegedly infringing activity] allows for the exchange of copyrighted material." *Id.* (citing *Sony,* 464 U.S. at 436). "To enjoin [allegedly infringing activity] simply because [it] allows for infringing use would . . . violate *Sony* and potentially restrict activity unrelated to infringing use." *Id.*

In this case, plaintiffs' information provided to Brown & Rosen on March 21, 2017, does not give Brown & Rosen "actual knowledge" of "specific information [that] identifies infringing activity." At best, it tells Brown & Rosen that plaintiffs believe Boxill has

---

[4] Nor could it, because at the time plaintiffs sent the Confidentiality Agreement to Brown & Rosen they did not have registered copyrights on the Prince Works that did not include Mr. Boxill. The only registration was the March 10, 2017 registration identifying Prince and Boxill for Deliverance.

breached the Confidentiality Agreement. But it does not convey any information to Brown & Rosen that would cause it to actually know that the release of the subject works infringed on any registered copyright, and, in fact, cannot have done so, because, at the time plaintiffs informed Brown & Rosen of the Confidentiality Agreement, they did not hold any registered copyright to the subject works separate from Boxill.

Moreover, plaintiffs cannot show any *inducement* of the allegedly infringing act. Brown & Rosen provided a legal opinion to its clients regarding the joint-author status question. At the time Brown & Rosen issued its opinion letter—which plaintiffs allege was the inducing act—it relied on information including but not limited to (1) its client to reasonably conclude that Boxill had joint-author status on the Prince Works via Affidavit, (2) an actual copyright registration and (3) direct communication with the Prince Estate in which the parties jointly negotiated for the possible inclusion of the song Deliverance on the Birth of A Nation soundtrack in September 2016. The Prince Estate from September 2016 through March 15, 2017 never articulated to Brown & Rosen an objection to Boxill as a joint-author. At the time the "infringement" happened, Brown & Rosen's clients held a copyright on the Prince Works. As a result, plaintiffs cannot show any facts demonstrating Brown & Rosen's legal opinion letter "induced" the alleged infringement. This count must also be dismissed for failure to state a claim on which relief can be granted because the Plaintiffs have not plead the alleged the actual knowledge Brown & Rosen had of the infringing use when the March 16, 2017 opinion letter was authored.

**D. Plaintiffs' claim for injunctive relief against Brown & Rosen fails as a matter of law.**

Count I of the TAC is a "shotgun" count for injunctive relief against all defendants, making no attempt to assign specific wrongful acts to individual defendants and identifying no specific conduct in support of the claim as to Brown & Rosen. (TAC ¶¶ 63-68). The Court may ignore the conclusory allegations of the claim and focus on the factual assertions that precede it. Those allegations make clear that Brown & Rosen's only role in the alleged wrongful distribution of the Prince Works was its issuance of the letter dated March 16, 2017, which pertains only to composition – not even the performance – of the music. (TAC ¶ 54). Brown & Rosen is not claimed to have been involved in the alleged usage of Prince trademarks and other intellectual property. (*See* TAC ¶¶ 39-53.) Plaintiffs' claim for injunctive relief must fail for lack of alleged predicate wrongful conduct by Brown & Rosen that must be enjoined.

**E. Plaintiffs' declaratory judgment claim fails as a matter of law because plaintiffs allege no "actual controversy" as to Brown & Rosen.**

Plaintiffs' final claim against Brown & Rosen is for declaratory judgment (Count Fourteen). In this count, plaintiffs ask the Court for a declaratory judgment against all Defendants—defined to include Brown & Rosen—declaring that: (1) Prince is the sole author of the subject compositions; (2) that Boxill is not a joint author of any Prince Work and does not have the right to reproduce, distribute, or create derivative works; (3) that the sound recordings Deliverance made after Prince's death are not protected by copyright; and (4) that Boxill's copyrights are invalid. (TAC ¶¶ 171-76). Plaintiffs allege that Boxill

25

obtained his copyright on the subject works wrongfully, and that there is an actual controversy between plaintiffs and defendants about whether Boxill is a joint author.

The Declaratory Judgment Act permits courts to "declare the rights and other legal relations of any interested party seeking" a declaration "[i]n a case of actual controversy" within their jurisdictions. 28 U.S.C. § 2201(a). Moreover, Article III of the U.S. Constitution confers jurisdiction to federal courts to adjudicate "Cases" or "Controversies." U.S. Const. art. III, § 2. The Article III case-or-controversy requirement "is no less strict when a party is seeking a declaratory judgment than for any other relief." *Fed. Express Corp. v. Air Line Pilots Ass'n*, 67 F.3d 961, 963 (D.C. Cir. 1995) (citing *Altvater v. Freeman*, 319 U.S. 359, 363 (1943)); *see also Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 647 (3d Cir. 1990) ("The discretionary power to determine the rights of parties before injury has actually happened cannot be exercised unless there is a legitimate dispute between the parties."); *Vorbeck v. Schnicker*, 660 F.2d 1260, 1265 (8th Cir. 1981) ("A federal court has no power to issue a judgment in a case unless it involves an actual controversy between adverse parties in an adversary proceedings. No exception is made for declaratory judgments.").

To establish that a matter is a "controversy" within the meaning of the Declaratory Judgment Act and Article III of the Constitution, a party "must 'show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Hoffman v. Dist. of Columbia*, 643 F.Supp.2d 132, 140 (D.D.C. 2009) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)); *see Fed. Express Corp.*, 67 F.3d at 964 (same);

*Rozelle v. Quinn*, 47 F. Supp. 740, 742 (S.D. Cal. 1942) ("Declaratory relief requires the existence of rights and legal relations capable of declaration. This necessarily implies rights and legal relations not merely with reference to one's self, but with another, involving an actual controversy."). The existence of an actual controversy is determined at the time the court acts. *Golden v. Zwickler*, 394 U.S. 103, 108 (1969); *Nat'l Hockey League v. Nat'l Hockey League Players Ass'n*, 789 F. Supp. 288, 295 (D. Minn. 1992); Wright, Miller & Kane, *Federal Practice & Procedure* § 2757 (1983).

Here, there is no allegation that Brown & Rosen has or ever did have an adverse *legal* interest with respect to the issue of joint authorship. The TAC does not allege that Brown & Rosen claims to be an author of the works or to have any economic stake in the outcome of the dispute about which copyrights are valid and which are not. In the absence of a claim by Brown & Rosen that it has rights that depend on the question of joint authorship, there is no legal adversity and hence no actual controversy as between Brown & Rosen and the plaintiffs. *See Czarnik v. Illumina, Inc.*, 437 F. Supp. 2d 252, 258 (D. Del. 2006) (dismissing declaratory judgment claim because defendant made no threat of litigation to enforce a patent and was not alleged to be participating in infringing activity).

Plaintiffs' declaratory-judgment claim alleges an actual controversy exists between plaintiffs and defendants "regarding Defendants' contention that Boxill is a joint author." (TAC ¶ 174). As to Brown & Rosen, that is not an "actual controversy" because Brown & Rosen claims no authorship rights, nor does its opinion on whether Boxill is a joint author – issued before it even knew about the Confidentiality Agreement – create an "actual controversy" between it and the plaintiffs. As a result, plaintiffs are not entitled to a

declaratory judgment against Brown & Rosen and Count Fourteen must be dismissed as to Brown & Rosen.

## **CONCLUSION**

For the reasons stated herein, defendant Brown & Rosen, LLC respectfully asks that the Court dismiss it from this suit for lack of personal jurisdiction and that all claims alleged against it be dismissed with prejudice because they fail to state a claim upon which relief can be granted.

Dated September 4, 2018      By:   s/ M. Gregory Simpson

M. Gregory Simpson (#204560)
Julia J. Nierengarten (#0391851)
Meagher & Geer, P.L.L.P.
33 South Sixth Street, Suite 4400
Minneapolis, MN 55402
Telephone: (612) 338-0661
Facsimile: (612) 338-8384
Email: gsimpson@meagher.com
      jnierengarten@meagher.com

**Attorneys for Defendant Brown & Rosen, LLC**

12370281.1

28