## UNITED STATES DISTRICT COURT
### DISTRICT OF MINNESOTA

| | |
|---|---|
| Paisley Park Enterprises, Inc. and Comerica Bank & Trust, N.A. as Personal Representative for the Estate of Prince Rogers Nelson, | Court File No.  17-cv-1212 WMW/TNL |
| Plaintiffs, | |
| v. | **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO BROWN & ROSEN'S MOTION TO DISMISS** |
| George Ian Boxill, Rogue Music Alliance, LLC, Deliverance, LLC, David Staley, Gabriel Solomon Wilson, Brown & Rosen, LLC and Sidebar Legal, PC, | |
| Defendants. | |

### INTRODUCTION

Brown & Rosen is subject to personal jurisdiction and must face the consequences of its actions in this lawsuit.  Brown & Rosen engaged in numerous contacts directed to Minnesota, including committing intentional torts knowing that they would harm Plaintiffs Paisley Park Enterprises, Inc. and Comerica Bank & Trust, N.A. as Personal Representative of the Estate of Prince Rogers Nelson (collectively, "Prince Estate") in Minnesota.  Brown & Rosen's actions are more than sufficient to confer personal jurisdiction and, accordingly, its motion to dismiss under Rule 12(b)(2) should be denied.

Furthermore, the Third Amended Complaint ("TAC") states well-grounded claims for relief.  Contrary to Brown & Rosen's argument, lawyers are not immune from suit by non-clients when they commit intentional torts, such as tortiously interfering with a

REDACTED

contract and engaging in contributory copyright infringement.  The TAC asserts four well-pleaded claims against Brown & Rosen that should proceed in this Court.

## FACTS

### A.    Prince Dies and a Probate Action Begins in Minnesota

Prince Rogers Nelson, the international superstar and renowned artist known as "Prince," died on April 21, 2016, in Minnesota.  A probate matter began shortly thereafter and is pending in Carver County, Minnesota.  Third Amended Complaint, ECF No. 262 ("TAC"), ¶ 1.  Plaintiff Comerica Bank & Trust, N.A. is the Personal Representative of the Prince Estate, and Plaintiff Paisley Park Enterprises, Inc. is a Minnesota corporation owned by the Prince Estate.  TAC, ¶ 2.

### B.    George Ian Boxill Performed Services for Prince Under a Confidentiality Agreement

A prodigious and successful songwriter and musician, Prince wrote and recorded thousands of songs.  TAC, ¶ 3.  Prince worked with many sound engineers over the course of his career.  One of them was Defendant Boxill.  TAC, ¶ 4.

In 2004, Boxill executed a Confidentiality Agreement, pursuant to which he agreed that (1) all recordings that he worked on with Prince, whether prepared by Defendant Boxill or otherwise coming into his possession as a result of his work as a consultant, would remain Prince's sole and exclusive property; (2) he would not use any recordings or property in any way whatsoever; and (3) he would return any such recordings or property to Prince immediately upon request.  TAC, ¶ 5.

2

REDACTED

### C. Boxill Uses Recordings After Prince Dies

After Prince died, Boxill accessed five recordings he had in his possession from his work for Prince, changed them, and recruited business partners to help release them. TAC, ¶¶ 7, 32. The songs in issue are *Deliverance, I Am, Touch Me, Sunrise Sunset* and *No One Else*. The latter four songs are collectively referred to as "*Man Opera*." Boxill's group planned to release the works as an extended play album on the first anniversary of Prince's death. TAC, ¶ 59.

### D. Brown & Rosen Represented Boxill's Group

Boxill engaged attorney Christopher Brown from Brown & Rosen to represent him. Declaration of Christopher L. Brown ("Brown Dec."), ¶ 2. Brown later began representing Boxill's business partners Rogue Music Alliance, LLC ("RMA") and Deliverance, LLC. *Id.*, ¶¶ 2, 3.

Less than one month after Prince died, Brown wrote an email purporting to state the rights of the Prince Estate and Boxill. Declaration of Lora M. Friedemann ("Friedemann Dec."), Exhibit 1. Brown opined that Prince and Boxill were joint owners of "any track/song that Prince and Ian collaborated on." *Id.* at 1. Brown asserted that Boxill owned half of any money received from sales of the records, and that the Prince Estate owned the other half. *Id.* With respect to publishing, Brown opined that the Prince Estate "owns 90 percent of each song and Ian [Boxill] owns 10 percent." *Id.* at 2.

████████████████████████████████████████████████.

Friedemann Dec., Exhibit 2, 113:10-115:22; 127:2-128:14. Brown wrote that "[t]he fact

that Prince never left a will and that there is nothing in writing works in our favor."
Friedemann Dec., Exhibit 1 at 1.

Shortly thereafter, counsel for RMA requested that Brown & Rosen provide a letter "that we could use as part of our discussions … to address the objection or concern over rights."  Friedemann Dec., Exhibit 3 at 6.  RMA requested that the letter address Brown's qualifications, an explanation of Boxill's claimed rights, and "a statement of why the estate's rights are different than Ian's."  *Id*.  RMA requested the letter quickly "to advance the conversations with Apple, Target, Tidal and others."  *Id*.  The group decided to "wait on" any "direct communication with the estate."  *Id*. at 1-2.  On July 7, 2016, Brown & Rosen provided a letter which, like the May 2016 email, purported to declare the rights of Boxill and the Prince Estate.  Friedemann Dec., Exhibit 4.

### E.     Brown Requests a License from the Prince Estate in Minnesota, and the Estate Declines

Brown initiated contact with the Prince Estate in Minnesota in September 2016.
Friedemann Dec., Exhibit 5, 85:13-86:10, 109:13-115:20.  At the time, Bremer Trust served as Special Administrator for the Estate.  *Id*. at 83:12-25. Traci Bransford, an attorney at Stinson Leonard Street in Minneapolis, served as entertainment counsel for Bremer.  *Id*.  Brown contacted Bransford concerning a request to license the song *Deliverance*.  *See id*. at 85:13-86:10, 109:13-115:20.

Brown claimed that Boxill jointly authored the song with Prince.  *Id*.  Bransford questioned Brown's contention that Boxill was a joint author and asked for evidence in writing supporting Boxill's claimed authorship.  *Id*. at 109:13 – 112:25.  Brown never

4

REDACTED

provided any evidence supporting his contention that Boxill authored the song jointly with Prince.  *Id*. at 110:1-22; 117:1-17.

After several telephone calls and emails, the Estate rejected the request to license *Deliverance*.  Bransford told Brown that "one of the main [reasons]" the Estate rejected the requested license was Bransford's "concern regarding Mr. Boxill's claim to ownership."  *Id*. at 119:1 – 120:7.

Brown's story is different.  According to Brown, he reached an oral agreement with Bransford.  Friedemann Dec., Exhibit 2, 323:13-324:9.  Brown testified that Bransford agreed that Boxill was a joint author and accepted the financial arrangement Boxill proposed.  *Id*.

### F.      Brown Contacts the Estate and Issues a Formal Opinion Letter

Brown contacted the Estate again in March 2017.  Friedemann Dec., ¶ 8.  By that time, Plaintiff Comerica Bank & Trust, N.A. had been appointed Personal Representative.  *Id*.  Comerica's counsel in Minnesota immediately sent a letter to Brown & Rosen demanding that Boxill's group refrain from releasing the music and/or using the PRINCE® trademark.  Friedemann Dec., Exhibit 6.

That same day, Brown issued a formal opinion letter purporting to state the rights of the Prince Estate and Boxill.  Friedemann Dec., Exhibit 7.  Like Brown's earlier opinions, the Opinion Letter asserts that "Prince owns 90 percent of each song and Boxill owns 10 percent."  *Id*. at 2.  With respect to the master recordings Boxill created after Prince died, the Opinion Letter asserts that ownership "can be split 50/50" in light of "the fact that Boxill has paid substantial costs."  *Id*. at 3.

### G.   The Estate Demands the Music Pursuant to the Confidentiality Agreement

On March 21, 2017, Brown called Wessberg in Minneapolis and told her that Boxill intended to release *Deliverance* independently.  Friedemann Dec., Exhibit 8, 158:17-161:6.  Wessberg demanded that Brown return the recordings.  *Id*.  Later that day, Wessberg sent Brown the Confidentiality Agreement between Boxill and Paisley Park Enterprises and repeated the Estate's demand to return the recordings.  *Id*.

The Confidentiality Agreement is a contract between Boxill and Paisley Park Enterprises, Inc., a Minnesota entity with its principal place of business in Minnesota. TAC, Exhibit A.

### H.   Brown Tells His Clients to Proceed

Brown advised his clients regarding the legal effect of the Confidentiality Agreement.  Brown told his clients that "there was no need to return the tracks," or to alter plans to release the music.  Friedemann Dec., Exhibit 9, 819:24-820:25.  Brown also advised that counsel's demand to return the tracks was "a misunderstanding that would be cleared up and that we should move ahead."  *Id.*, 821:1-6.

### I.   Brown Continues to Encourage the Release of the Deliverance EP

Despite receiving a cease and desist letter from the Prince Estate and a demand to return the music under the Confidentiality Agreement, Brown & Rosen permitted the continued use of the Opinion Letter to persuade third parties that Boxill's group had the legal right to release the music.  TAC, ¶¶ 87-90.  Although Brown knew that the Prince Estate disagreed, the Opinion Letter omits that fact.  *See* Friedemann Dec., Exhibit 7.

<u>REDACTED</u>

Brown also hid the fact that Brown & Rosen had a financial interest in the matter and was negotiating for ███████████████████████. Friedemann Dec., Exhibit 2, 60:12-65:12; TAC, ¶ 57. ██████████████████████████████████████ ██████████████████████████████████████████████. Friedemann Dec., Exhibit 2, 70:17 – 74:17.[1]

In addition to allowing use of the Opinion Letter, Brown & Rosen purported to grant a license to the song *Deliverance* after receiving the Confidentiality Agreement. TAC, ¶ 90. On April 17, 2017, Brown provided a letter to ████████████████ ███████████ purporting to grant a free license to use *Deliverance* during the production. Friedemann Dec., Exhibit 10.

### J. The Estate Sues and the Defendants Release Anyway

The Estate filed an arbitration and a lawsuit seeking a temporary restraining order. Representatives of RMA testified that they continued with plans to release the Deliverance EP based on Brown's advice. Friedemann Dec., Exhibit 11, 640:8-641:10; Exhibit 9, 800:15-801:4.

---

[1]     Brown & Rosen argues that it did not have a financial interest in the *Deliverance EP*. *See, e.g.*, Brown Dec., ¶ 3; ECF No. 332 at 6. The allegation in the TAC that Brown & Rosen had a financial interest in the release of the music is presumed true at this juncture. *See* TAC, ¶ 105. Moreover, Brown's deposition testimony shows ████████████████████████████████ Friedemann Dec., Exhibit 2, 60:12-65:12; 70:17-74:17. Finally, Brown & Rosen alleges (wrongly) that Plaintiffs "aver that Brown & Rosen is a member of Deliverance, LLC." ECF No. 332 at 14. Plaintiffs make no such allegation in the TAC. However, Plaintiffs could have alleged that Brown & Rosen owns units in the LLC. The Operating Agreement for Deliverance LLC indicates on its face that units were issued to Christopher Brown, and does not require a signature for the issuance of units to become effective. *See* Exhibit E to Declaration of M. Gregory Simpson, ECF No. 335-1.

## K.     The Defendants Sell to Minnesota Residents

Boxill's group released the *Deliverance* single on April 18, 2017.  Friedemann

Dec., ¶ 14.  RMA produced a spreadsheet showing sales of the music on the *Deliverance*

*EP* in discovery.  *Id.*, ¶ 15.  The spreadsheet shows sales to Minnesota residents.  *Id.*

## L.     The Estate's Third Amended Complaint Asserts Four Claims Against Brown & Rosen

The Estate filed a Third Amended Complaint on June 14, 2018 adding Brown &

Rosen, Sidebar Legal, David Staley and Gabriel Wilson as parties.  *See* TAC, ECF No.

262.[2]  The Third Amended Complaint ("TAC") asserts four claims against Brown &

Rosen:  Count One seeks an injunction, Count Four asserts a claim for tortious

interference with contract, Count Six asserts a claim for indirect copyright infringement,

and Count Fourteen seeks a declaratory judgment.  *See id*.

## ARGUMENT

## I.     THE COURT HAS PERSONAL JURISDICTION OVER BROWN & ROSEN

## A.     Standard of Review

When a defendant challenges the existence of personal jurisdiction, the plaintiff

bears the burden of making "a prima facie showing of personal jurisdiction over the

challenging defendant."  *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th

Cir. 2014).  The plaintiff may meet this burden by pleading facts sufficient to support a

reasonable inference that the defendant can be subjected to jurisdiction within the forum

---

[2]     Sidebar Legal represented RMA.  David Staley and Gabriel Wilson are principals of RMA.

state.  *See Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004).  Where – as is the case here – the Court has not conducted an evidentiary hearing, it must view the facts in the light most favorable to the nonmoving party and resolve all factual conflicts in favor of that party.  *Pangea, Inc. v. Flying Burrito LLC*, 647 F.3d 741, 745 (8th Cir. 2011) (citing *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991)).

The Court can exercise personal jurisdiction over a nonresident defendant if  (1) Minnesota's long arm statute, Minn. Stat. § 543.19, is satisfied; and (2) the exercise of personal jurisdiction does not offend due process.  *Stanton v. St. Jude Med., Inc.*, 340 F.3d 690, 693 (8th Cir. 2003).  Because Minnesota's long arm statute extends the personal jurisdiction of Minnesota courts as far as due process allows, *see, e.g., In re Minnesota Asbestos Litig.*, 552 N.W.2d 242, 246 (Minn. 1996), the Court need only evaluate whether the exercise of personal jurisdiction comports with due process.  *Guinness Imp. Co. v. Mark VII Distribs., Inc.*, 153 F.3d 607, 614 (8th Cir. 1998).

Due process requires that the defendant has "certain minimum contacts" with Minnesota "such that the maintenance of suit does not offend 'traditional notions of fair play and substantial justice'."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation omitted).  Sufficient minimum contacts exist when the "defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there."  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Personal jurisdiction can be specific or general.  *Viasystems, Inc. v. EBM—Papst St. Georgen GmbH & Co.*, 646 F.3d 589, 593 (8th Cir. 2011).  "Specific jurisdiction

REDACTED

refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state." *Id*.  Specific jurisdiction can arise from a single contact with the forum state.  *See, e.g., R.H. Fulton v. Chicago, Rock Island & Pac. R. R. Co*., 481 F.2d 326, 334-36 (8th Cir. 1973).

The Eighth Circuit has established a five-factor test to determine the sufficiency of a defendant's contacts:  (1) the nature and quality of the contacts, (2) the quantity of the contacts; (3) the relation between the contacts and the action; (4) the forum state's interest in the litigation; and (5) the convenience of the parties.  *Epps v. Stewart Info. Servs. Corp*., 327 F.3d 642, 648 (8th Cir. 2003).  The first three factors are "of primary importance," and the Court may consider them together.  *Burlington Indus., Inc. v. Maples Indus., Inc*., 97 F.3d 1100, 1102 (8th Cir. 1996).

### B.    Brown & Rosen is Subject to Specific Jurisdiction

Brown & Rosen's contacts are more than sufficient for Brown & Rosen to anticipate being haled into Court in Minnesota.

First and foremost, sales of the infringing product in Minnesota support the exercise of personal jurisdiction.  *See, e.g., Imation Corp. v. Sanho Corp.*, No. 15-1883 (JRT/JSM), 2016 WL 4179363 at *3 (D. Minn. Aug. 5, 2016) (a single direct sale of an infringing product supports personal jurisdiction); *WhatRU Holding, LLC v. Bouncing Angels, Inc*., No. 13-2745 (JNE/TNL), 2014 WL 641517 at *3 (D. Minn. Feb. 19, 2014) (collecting cases and finding specific personal jurisdiction over non-resident corporation based on single sale of infringing product in Minnesota).  Although sales of the tracks on the *Deliverance EP* were made by RMA and Deliverance, LLC, Brown & Rosen

REDACTED

contributed to the infringement by advising RMA and Deliverance, LLC to distribute the music knowing that it would be sold nationwide, including in Minnesota.

In addition, Brown & Rosen initiated communications with the Prince Estate in Minnesota on two occasions.  On the first occasion Brown & Rosen sought a license from the Estate and claims that it negotiated an on oral contract with the Prince Estate.  Although the Estate denies Brown & Rosen's claim that it reached an oral agreement with the Estate, that Brown & Rosen contends entered into a contract with the Prince Estate in Minnesota supports the exercise of personal jurisdiction.  On the other occasion, the Prince Estate demanded a halt to the release of the music and demanded its return.  The Estate sent Brown & Rosen the Confidentiality Agreement, putting Brown & Rosen on notice of its contents.

Finally, Brown & Rosen advised its clients regarding the legal effect of the Confidentiality Agreement – a contract with a Minnesota corporation governed by Minnesota law – and purported to declare the rights of the Prince Estate in the music in issue.  Brown & Rosen's actions are directed to the Prince Estate in Minnesota.

Brown & Rosen's conduct is more than sufficient for the firm to anticipate being sued in Minnesota.

Furthermore, the Prince Estate's claims against Brown & Rosen arise from and relate to Brown & Rosen's contacts in Minnesota.  The Prince Estate's claim for contributory copyright infringement arises in part from Brown & Rosen's encouragement of its clients and third parties to distribute the music over the Estate's objection.  The

REDACTED

direct infringement that underlies the Estate's claim is based in part on sales to Minnesota residents.

The Estate's claim for tortious interference with contract arises in part from Brown & Rosen's contacts with the Prince Estate in Minnesota, and the Estate's transmission of a copy of the Confidentiality Agreement to Brown & Rosen, leading to knowledge of the contract and its requirements by Brown & Rosen and the other Defendants. As noted below, the Estate must show that Brown & Rosen had knowledge of the contract to prevail on its tortious interference claims. *See, e.g., Select Comfort Corp. v. Sleep Better Store, LLC*, 838 F. Supp. 2d 889, 892 (D. Minn. 2012) (stating elements of claim). The Prince Estate relies on its communications with Brown & Rosen to establish knowledge of the Confidentiality Agreement.

The Estate's claim for tortious interference also arises in part from the advice Brown & Rosen gave its clients that the Confidentiality Agreement did not require any change in their plans to distribute music Boxill obtained through his work for Prince. In rendering advice on this subject, Brown & Rosen interpreted a contract governed by Minnesota law and purported to state the rights of the Prince Estate under that contract.

Brown & Rosen argues that that its contacts with Minnesota do not count for personal jurisdiction purposes because the firm acted as attorneys representing clients. *See* ECF No. 332 at 9-11. Notably, Brown & Rosen cites no case law supporting its argument. *See id*. The Prince Estate is aware of no authority that establishes a different standard when assessing whether personal jurisdiction may be exercised over a law firm than for any other business. Brown & Rosen's unsupported argument should be rejected.

12

Minnesota has an interest in ensuring that injured Minnesotans are compensated for their injuries.  *See, e.g., State Farm Fire & Cas. Co. v. BMC USA Corp.*, No. 16-1793 (JRT/TNL), 2017 WL 4325693 at *5 (D. Minn. Sept. 27, 2017).  The Court should exercise personal jurisdiction over Brown & Rosen.

### C.     The *Calder* Effects Test Provides an Alternative Ground for the Exercise of Personal Jurisdiction.

The "effects test" established in *Calder v. Jones*, 465 U.S. 783 (1984) provides an additional ground for the exercise of personal jurisdiction.

The effects of a tortious act serve as a source of personal jurisdiction where they: (1) are intentional; (2) are uniquely or expressly aimed at the chosen forum; and (3) caused harm, the brunt of which was suffered in the forum and which the defendant knew was likely to be suffered there.  *Zumbro, Inc. v. California Nat. Prods.*, 861 F. Supp. 773, 782-83 (D. Minn. 1994).  The effects test is often applied in intellectual property cases. *See, e.g., Dakota Indus.*, 946 F.2d at 1390-1391 (applying effects test in a trademark infringement case); *Janel Russell Designs, Inc. v. Mendelson & Associates, Inc.*, 114 F. Supp. 2d 856, 862 (D. Minn. 2000) (finding personal jurisdiction in a copyright infringement lawsuit under the *Calder* effects test, and stating that "[p]laintiff is a resident of the forum, and thus defendant could reasonably anticipate that the brunt of the injury would be felt here"); *DakColl, Inc. v. Grand Cent. Graphics, Inc.*, 352 F. Supp. 2d 990, 998 (D. N.D. 2005) (applying effects test in a copyright infringement case); *Goldberg v. Cameron*, 482 F. Supp. 2d 1136, 1144 (N.D. Cal. 2007) ("the effects test is satisfied in a copyright infringement action in which the plaintiff brings suit in the forum

where the plaintiff resides, and the defendant knows that the plaintiff resides there")
(citing *Columbia Pictures Television v. Krypton Broad. of Birmingham, Inc.*, 106 F.3d
284, 289 (9th Cir. 1997)).

    As this Court noted in its October 26, 2017 Order addressing personal jurisdiction
over RMA and Deliverance LLC, "a diminution in value of Prince's estate that is
attributable to the tortious actions of RMA and Deliverance is the primary effect of
RMA's and Deliverance's tortious conduct."  ECF No. 128 at 9.  Furthermore, the injury
to the Prince Estate occurred in Minnesota.  *See id.*

    In *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384 (8th Cir. 1991),
the Eighth Circuit found that a California corporation based in California was subject to
personal jurisdiction in South Dakota because the California corporation was alleged to
have knowingly and intentionally infringed on a South Dakota corporation's trademark
and such conduct was uniquely aimed at South Dakota.  In that case, Dakota Industries
(Industries), a South Dakota corporation based in South Dakota, owned the registered
trademark "Dakota" for women's outerwear.  *Id.* at 1386.  Industries sued Dakota
Sportswear (Sportswear) for trademark infringement in South Dakota.  *Id.* at 1386.
Sportswear argued that the Court lacked personal jurisdiction.  *Id.* at 1387.  The court
applied the *Calder* effects test and held that Sportswear's actions subjected it to suit in
South Dakota where the "brunt" of the injury was felt.  *Id.* at 1391.

    This case is analogous.  The Opinion Letter purports to declare the Estate's rights
in several musical works.  Brown & Rosen issued the Opinion Letter knowing that the
Estate disagreed with the conclusion, and disseminated the opinion with the goal of

REDACTED

inducing third parties to distribute the music in violation of the Estate's rights.  Brown & Rosen continued to encourage the distribution of the music on the Deliverance EP after receiving the Confidentiality Agreement and the Estate's demand to return the music. Brown & Rosen knew that a probate action was pending in Minnesota, and that the brunt of the harm would be felt in Minnesota.

Like RMA and Deliverance, Brown & Rosen is subject to personal jurisdiction under the *Calder* effects test.  Brown & Rosen's motion to dismiss the TAC for lack of personal jurisdiction should be denied.

## II.    THE THIRD AMENDED COMPLAINT STATES WELL-GROUNDED CLAIMS FOR RELIEF AGAINST BROWN & ROSEN

### A.    Brown & Rosen is Not Immune from Suit

Brown & Rosen argues that attorneys cannot be liable to non-clients.  *See* ECF No. 332 at 16.  Brown & Rosen's argument fails because attorneys are liable to non-clients when they commit intentional torts, such as tortiously interfering with a contract and contributing to copyright infringement.

Brown & Rosen cites three cases allegedly standing for the proposition that attorneys are not liable to non-clients under any circumstances:  *McDonald v. Stewart*, 182 N.W.2d 437 (Minn. 1970); *Rucker v. Schmidt,* 768 N.W.2d 408 (Minn. Ct. App. 2009), and *Schuler v. Meschke*, 435 N.W.2d 156 (Minn. Ct. App. 1989).  *See* ECF No. 332 at 16.  All three cases recognize a general rule and at least one exception.  The general rule is that attorneys are not liable to non-clients for *negligent* acts performed within the scope of their duties as counsel.  *Eustis v. David Agency, Inc.*, 417 N.W.2d

295, 298 (Minn. Ct. App. 1987) ("The trial court applied the well-established rule that an attorney will not be liable to a non-client third party for negligence.").  The exception is for intentional torts; attorneys are liable to non-clients for the intentional torts they commit, even if they are representing a client at the time.  *Id.* (holding that an attorney may be liable to a non-client "if that attorney acted with fraud, malice or has otherwise committed an intentional tort"); *McDonald*, 182 N.W.2d at 440 (attorneys are liable to non-clients when the attorney "is dominated by his own personal interest or knowingly participates with his client in the perpetration of a fraudulent or unlawful act"); *Rucker*, 768 N.W.2d at 412 (attorneys are liable to non-clients when the attorney "commits an intentional tort").

Brown & Rosen relies on the general rule without acknowledging the exception (even though it is discussed in all three cases Brown & Rosen cites).  This Court cannot ignore the exception.  The Prince Estate may pursue claims against Brown & Rosen for intentional torts, and the Estate's claims for tortious interference with contract and copyright infringement are intentional torts.  *See, e.g., Qwest Commc'ns Corp. v. Free Conferencing Corp.*, 837 F.3d 889, 897 (8th Cir. 2016) ("tortious interference with a business relationship is an intentional tort") (citing Restatement (Second) of Torts § 766 cmt. j. (1979)); *Bucklew v. Hawkins, Ash, Baptie & Co., LLP*, 329 F.3d 923, 931 (7th Cir. 2003) ("[c]opyright infringement … is an intentional tort") (Posner, J.); *Metropolitan Reg. Info. Sys., Inc. v. American Home Realty Network, Inc*., 888 F. Supp. 2d 691, 698 (D. Md. 2012) ("[c]opyright infringement is an intentional tort").  Brown & Rosen

16

REDACTED

concedes that the Estate is pursuing intentional torts.  ECF No. 332 at 11 ("Plaintiffs have alleged intentional torts against Brown & Rosen.").

Citing *McDonald v. Stewart,* Brown & Rosen suggests that Minnesota courts have held that an attorney cannot be liable for tortious interference with contract.  *See* ECF No. 332 at 16.  The claim for tortious interference with contract asserted in *McDonald* failed on the merits, not because the Court held that an attorney may not be held liable if the attorney commits the tort of intentional interference with contract.  The *McDonald* court explained that attorneys are not immune from suit if the attorney "either is dominated by his own personal interest or knowingly participates with his client in the perpetration of a fraudulent or unlawful act."  182 N.W.2d at 440.  Both exist here.  The TAC alleges that Brown & Rosen acted to further the firm's own financial interest and committed two intentional torts in the process.

Brown & Rosen is not immune from suit for the intentional torts alleged in the TAC.

**B.     The TAC States Viable Claims for Relief**

The Estate asserts four claims against Brown & Rosen, all of which are pled sufficiently in the TAC.

**1.     Tortious Interference with Contract**

Count Four of the TAC asserts a claim for tortious interference with contract against Defendants Brown & Rosen, Sidebar Legal, RMA, Deliverance, Wilson and Staley.  The Estate's claim for tortious interference with contract has five elements:  (1) the existence of a contract between the Estate and a third party; (2) Defendants'

knowledge of the contract; (3) Defendants' intentional procurement of a breach of the contract; (4) Defendants' procurement is without justification; and (5) damages. *See, e.g., Select Comfort Corp.*, 838 F. Supp. 2d at 892.

All five elements are pled against Brown & Rosen with supporting factual allegations. First, Plaintiff Paisley Park Enterprises is party to a Confidentiality Agreement with Defendant Boxill. TAC, ¶ 5 and Exhibit A thereto. Second, Brown & Rosen had knowledge of the contract by at least March 21, 2017. TAC, ¶ 84. Third, Brown & Rosen intentionally procured breaches of the Confidentiality Agreement after that date by inducing third parties to use and distribute the music Boxill obtained through his work for Prince, and by purporting to provide a license to the music. TAC, ¶¶ 86-91. Finally, Brown & Rosen's conduct was not justified and damaged the Estate. TAC, ¶¶ 92-94.

Brown & Rosen characterizes the Estate's claim differently in its brief, and wrongly asserts that the Estate is claiming that Brown & Rosen tortiously interfered with the Confidentiality Agreement by "providing a legal opinion to its clients regarding joint authorship of the Prince Works." ECF No. 332 at 16. Brown & Rosen's argument is inconsistent with the allegations in the TAC, which focus on Brown & Rosen's actions to encourage and induce third parties to use the music Boxill obtained through his work for Prince in breach of the Confidentiality Agreement. The Estate's claims cannot be avoided by recasting them as something other than what they are.

Brown & Rosen also contends that the firm issued the Opinion Letter to give legal advice to Boxill. *See* ECF No. 332 at 17. The TAC alleges that the Opinion Letter

**REDACTED**

served a different purpose – namely, to "convince third parties to promote, advertise, and distribute Prince Works," and to "convince third parties that they had the legal right to release Prince Works."  TAC, ¶ 55.  The Prince Estate's allegations are supported by contemporaneous emails.  *See, e.g.*, Friedemann Dec., Exhibit 3.

Brown & Rosen argues that the Prince Estate has not stated a claim because the alleged acts of interference occurred before Brown & Rosen received the Confidentiality Agreement on March 21, 2017.  ECF No. 332 at 18.  The TAC alleges otherwise.  The conduct at issue consists of intentional acts by Brown & Rosen to induce breaches of the Confidentiality Agreement after March 21, 2017.  *See, e.g.*, TAC, ¶¶ 87, 90.  Specifically, the TAC alleges that Brown & Rosen told third parties that Boxill had the right to distribute the Deliverance EP after receiving the Confidentiality Agreement.  TAC, ¶ 87.  RMA representatives testified that Christopher Brown advised them to release the *Deliverance* single, despite knowledge of the Confidentiality Agreement, a written demand from the Estate to return the music, and a pending motion for a TRO.  Releasing and distributing the music is an obvious breach of the Confidentiality Agreement, and Brown & Rosen told third parties to engage in those activities.

In addition, Paragraph 90 of the TAC alleges that Brown & Rosen "allowed the [Opinion Letter] to be distributed after learning of the Confidentiality Agreement and purported to grant a license to the song Deliverance after receiving the Confidentiality Agreement."  TAC, ¶ 90.  The Confidentiality Agreement prohibits Boxill from using materials he obtained through his work for Prince in any manner.  Purporting to grant a

license to the music is "use" in breach of the contract.  Brown & Rosen induced the breach by preparing the license and providing it to the would-be licensee.

Finally, Brown & Rosen argues that the copyright registrations Boxill obtained somehow allow him to breach the Confidentiality Agreement with immunity, and also shield Brown & Rosen from liability for tortiously interfering with that contract.  ECF No. 332 at 19.  Leaving aside the incorrect argument Brown & Rosen makes about the legal effect of a copyright registration, Brown & Rosen's argument fails for a simple reason:  copyright law does not supplant contract and tort law.  An action may result in liability for breach of contract or tortious interference even if that same act did not infringe a copyright.  Brown & Rosen cites no cases to the contrary.

Brown & Rosen argues that the TAC does not state a claim because it does not identify any third party who received the Opinion Letter after Brown & Rosen received the Confidentiality Agreement on March 21, 2017.  ECF No. 332 at 19-20.  The Prince Estate does not have to identify third parties in the TAC to meet the pleading standard in Rule 8.  Nonetheless, the Estate provided an example where the Opinion Letter was distributed after March 21, 2017 with Brown & Rosen's knowledge.  *See* Friedemann Dec., Exhibit 12.

Finally, Brown & Rosen argues that the TAC does not state a claim because third parties did not breach the Confidentiality Agreement by buying the tracks on the Deliverance EP.  ECF No. 332 at 20.  Brown & Rosen intentionally induced and caused *Boxill* to breach the Confidentiality Agreement.  Brown & Rosen knew that the Confidentiality Agreement prohibited Boxill from using the music in any manner by at

least March 21, 2017, and intentionally procured breaches of the Confidentiality

Agreement _by Boxill_ after that date.

Brown & Rosen's motion to dismiss the Prince Estate's tortious interference claim

should be denied.

### 2.      Indirect Copyright Infringement

Count Six of the TAC asserts a claim for indirect copyright infringement against

Brown & Rosen and Sidebar Legal.

Contributory copyright infringement arises when one "intentionally induc[es] or

encourag[es] direct infringement."  _Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd_.,

545 U.S. 913, 930 (2005).  To prevail, the Prince Estate must show that Brown & Rosen:

(1) has knowledge of a third party's infringing activity, and (2) "induces, causes or

materially contributes to the infringing conduct."  _Perfect 10, Inc. v. Visa Int'l Serv.,_

_Ass'n_, 494 F.3d 788, 795 (9th Cir. 2007).

The TAC states a claim for contributory copyright infringement against Brown &

Rosen.  Specifically, the TAC alleges:

> Defendant Brown & Rosen had actual knowledge and reason to know that
> Boxill, RMA and Deliverance were engaging in direct infringement of
> Plaintiffs' exclusive rights in Prince Works.  Brown & Rosen intentionally
> and materially contributed to the infringing activity, including by
> distributing legal opinion letters falsely representing that Defendant Boxill
> had the right to release the Prince Works.  Christopher Brown, a principal
> of Brown & Rosen, issued the opinion letters without performing adequate
> investigation or analysis.  Brown also failed to disclose that Brown &
> Rosen has a financial interest in the matter.  Brown never updated the letter
> to address the Confidentiality Agreement or to indicate to third parties that
> the Estate had objected to the release.  On information and belief, Brown
> hid these facts because he wanted third parties to rely on his opinion letters

REDACTED

and release Prince works over the Estate's objection.  Brown & Rosen thus actively urged, and contributed to, the infringing conduct.

TAC, ¶ 105.  Brown & Rosen also committed contributory copyright infringement by advising RMA to release the Deliverance EP in violation of the Estate's rights as the copyright owner.  *See* Friedemann Dec., Exhibits 9, 11.

Brown & Rosen argues that the TAC fails to state a claim because the Prince Estate does not claim that Brown & Rosen contributed to copyright infringement "*while [the Prince Estate] held registered copyrights in the Prince Works*."  ECF No. 332 at 22 (emphasis in original).  Essentially, Brown & Rosen is arguing that it cannot be liable for contributing to copyright infringement because the Prince Estate had not registered copyrights at the time Brown & Rosen committed the tort.

Brown & Rosen is confusing a registration certificate with a copyright interest. Registration "is not a condition of copyright protection."  17 U.S.C. § 408(a).  Rather, "[c]opyright inheres in authorship and exists whether or not [the work] is ever registered."  *Arthur Rutenberg Homes, Inc. v. Drew Homes, Inc.*, 29 F.3d 1529, 1531 (11th Cir. 1994); *see also Rottlund Co., Inc. v. Pinnacle Corp.*, No. 01-1980 DSD/SRN, 2004 WL 1879983 at *8 (D. Minn. Aug. 20, 2004) (copyright protection "subsists from the moment the work is fixed in any tangible medium of expression" and exists "whether or not it is ever registered") (citing *Arthur Rutenberg Homes*, 29 F.3d at 1531 and *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1085 (9th Cir. 1989) (internal quotations omitted)); *Roberts v. Gordy*, 877 F.3d 1024, 1028 (11th Cir. 2017) ("registration is a separate issue from the existence of the copyright itself"); *Morgan, Inc. v. White Rock Distilleries, Inc.*,

REDACTED

230 F. Supp.2d 104, 107 (D. Maine 2002) ("The Copyright Act makes clear that copyright exists in all works of authorship regardless of whether the copyright for such work is registered."). Because the copyright interest exists from the beginning, "a copyright holder can register a copyright and file suit after infringement occurs." *Olan Mills v. Linn Photo Co.*, 23 F.3d 1345, 1349 (8th Cir. 1994).

This Court rejected the argument Brown & Rosen is making in *CHS, Inc. v. PetroNet, LLC*, No. 10-cv-94, 2011 WL 1885465 at * 11 (D. Minn. May 18, 2011). The Plaintiff in *CHS* alleged infringement of a copyrighted flowchart. *Id*. at 10. The Defendant argued that it could not be liable for infringement because CHS did not apply to register the copyright until after the infringement occurred. *Id*. The Court rejected the argument and held that "fixating on the date of registration … misconstrue[s] federal copyright law." *Id*.

Brown & Rosen is advancing the same flawed argument. Brown & Rosen is liable for contributory copyright infringement even if the Prince Estate registered its copyright interest at a later date.

Brown & Rosen also appears to be arguing that it is not liable because it did not appreciate that the acts it was encouraging constitute copyright infringement. *See* ECF No. 332 at 22-23. Brown & Rosen's argument contradicts the allegations in the TAC, which must be taken as true. In the TAC, the Prince Estate alleges that Brown & Rosen acted intentionally, and with the goal of convincing third parties to distribute the works in violation of the Estate's rights. *See, e.g.*, TAC at 105. Furthermore, one acts with the requisite intent when he "knowingly takes steps that are substantially certain to result in"

the direct infringement.  *Perfect 10, Inc. v. Amazon.com, Inc*., 508 F.3d 1146 (9th Cir. 2007).  Brown & Rosen advised its clients and others to distribute the Estate's copyrighted works and cannot contend that it did not understand that its conduct would result in direct infringement of the Estate's rights.

Brown & Rosen's motion to dismiss the Estate's claim for indirect copyright infringement should be denied.

### 3.     Injunctive Relief

Count One seeks a preliminary and permanent injunction against all defendants.  Count One is not an independent cause of action, but instead seeks a remedy – namely, an Order requiring that the Defendants and all those acting in concert with them "return the Prince Works and refrain from further use of any material or information obtained in violation of the Confidentiality Agreement."  TAC, ¶ 68.  Although it may not be necessary to plead the requested injunctive relief as a separate count, the Prince Estate is seeking an injunction against Brown & Rosen and the other defendants, and has pled claims that support the requested injunction.  Accordingly, Brown & Rosen's motion to dismiss Count One of the TAC should be denied.

### 4.     Declaratory Judgment

Count Fourteen seeks a declaratory judgment against all Defendants.  Specifically, the Prince Estate is requesting that the Court declare that:

(a)     Prince Rogers Nelson is the sole author of the musical compositions *Deliverance, I Am, Touch Me, Sunrise Sunset, No One Else* and *I Am (Extended),* the sounds recordings of those works created during his lifetime, and the *Man Opera* compilation;

**REDACTED**

(b)     Defendant Boxill is not a joint author of any Prince Work, and does not have the right to reproduce, distribute, or create derivative works or possess without permission any Prince Work;

(c)     The sound recordings Defendants created of the works *Deliverance, I Am, Touch Me, Sunrise Sunset, No One Else,* and *I Am (Extended)* after Prince died are unauthorized derivative works that are not protected under the Copyright Act; and

(d)     The copyright registrations Defendant Boxill obtained (U.S. Copyright Registration Nos. SRU 1-247-999 and SRU 1-251-062) are invalid.

TAC, ¶ 176.

Brown & Rosen argues that it is not a proper defendant on this claim because it does not "have an adverse *legal* interest with respect to the issue of joint authorship," and has no "economic stake in the outcome."  ECF No. 332 at 27.  On the contrary, Brown & Rosen has consistently argued that Boxill is a joint author of the works on the Deliverance EP, and will presumably advance the same argument in defending the Estate's claim for contributory copyright infringement.  If Brown & Rosen concedes on the record that Boxill is not a joint author, then the Estate will withdraw this claim against Brown & Rosen.  If Brown & Rosen intends to assert joint authorship as a defense, then the parties have adverse legal interests, and the claim is appropriately asserted against Brown & Rosen.

## CONCLUSION

Brown & Rosen's motion to dismiss should be denied in its entirety.

Dated:  September 25, 2018                *s/Lora M. Friedemann*
                                          Lora M. Friedemann (#0259615)
                                          Grant D. Fairbairn (#0327785)
                                          Anne E. Rondoni Tavernier (#0398516)
                                          Barbara Marchevsky (#0398256)
                                          **FREDRIKSON & BYRON, P.A.**
                                          200 South Sixth Street, Suite 4000
                                          Minneapolis, MN  55402-1425
                                          Telephone:  612.492.7000

                                          lfriedemann@fredlaw.com
                                          gfairbairn@fredlaw.com
                                          arondonitavernier@fredlaw.com
                                          bmarchevsky@fredlaw.com

                                          ***Attorneys for Plaintiffs***

64817328.1