UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Paisley Park Enterprises, Inc. and Comerica Bank & Trust, N.A. as Personal Representative for the Estate of Prince Rogers Nelson,<br><br>      Plaintiffs,<br>v.<br><br>George Ian Boxill, Rogue Music Alliance, LLC, Deliverance, LLC, David Staley, Gabriel Solomon Wilson, Brown & Rosen, LLC and Sidebar Legal, PC,<br><br>      Defendants. | Court File No. 17-cv-1212 (WMW/TNL)<br><br>**DEFENDANT BROWN & ROSEN, LLC'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS** |

## INTRODUCTION

Defendant Brown & Rosen, LLC ("B&R") submits this reply in support of its motion to dismiss plaintiffs' Third Amended Complaint ("TAC") (*See* Motion to Dismiss, Doc. 330). Plaintiffs' opposition (Doc. 344) concedes that the claims are premised on disputed legal advice given by a non-Minnesota law firm to its non-Minnesota clients. Personal jurisdiction is lacking because all of B&R's relevant activity was outside Minnesota and not directed at it. The claims lack substantive merit because Minnesota prohibits suits against lawyers by non-clients for acts done within the scope of the professional relationship, whether the claim is labeled an intentional tort or as negligence.

## REPLY TO PLAINTIFFS' STATEMENT OF FACTS[1]

Plaintiffs' fact recitation requires correction. The TAC identified the March 16, 2017 opinion letter by B&R to the firm's client, which plaintiffs portray as making an unqualified representation that Boxill was a joint owner of the subject music works, as the first act giving rise to the claims against B&R. (TAC ¶ 54). The opposition memo adds two prior instances in which B&R gave advice similar to that in the March 16, 2017 letter, specifically, an email from Chris Brown dated May 18, 2016 (Doc. 346-1) and an opinion letter from him dated July 7, 2016. (Doc. 348.) Plaintiffs characterize these communications as "inaccurately" representing that the music was a joint work by Prince and Boxill. (TAC ¶ 54; Doc. 344 at p. 3).

But in all three of these communications, B&R included a caveat as part of its opinion: "Importantly, however, *in the absence of an agreement otherwise made in advance*, parties who make interdependent contributions to a work are co-authors." (Doc. 346-1, p. 2, sixth paragraph, last sentence); Doc. 348, p. 3, third paragraph, last sentence); Doc. 346-3, p. 2, third paragraph, last sentence) (emphasis added). As plaintiffs concede, B&R did not learn of the Confidentiality Agreement until March 21, 2017, which is *after* these written opinions. (Opp. Mem. P. 5 – Doc. 344, p. 5); TAC ¶ 37; *see also* Declaration of C. Brown ¶ 6 – Doc. 334.) Plaintiffs submit transcript testimony showing that Chris Brown was told by his clients that there was no writing on the subject of joint authorship,

---

[1] Facts and allegations recited or referenced herein are not conceded for any purpose beyond this motion.

2

which explains why his opinions did not consider the possible impact of the Confidentiality Agreement. (Doc. 347, pp. 17, lines 23-24 and p. 18, lines 1-10.) Defendants submitted a declaration from Chris Brown to the same effect, and indicating further that the opinions were based on facts provided by Boxill which were reduced to an Affidavit. (Doc. 334, p. 2, ¶ 5 and Ex. B thereto.) Thus, plaintiffs' assertion that B&R's opinion letters were wrong because they did not take into account the Confidentiality Agreement is not correct. B&R's actual advice was appropriately qualified. Plaintiffs have submitted testimony from B&R's clients indicating that they understood moving forward carried risk. (E.g., Doc. 346-3, p. 44, lines 9-11) (Question to David Staley: "So you knew your plan was risky … before your release, right?" Answer: "That's accurate.") Because B&R's opinion letters are the basis for the claims against B&R, it is important that they be characterized accurately.

## ARGUMENT

**I.  Plaintiffs' Claims Against B&R Should be Dismissed for Lack of Personal Jurisdiction.**

Plaintiffs argue specific personal jurisdiction over B&R exists because (1) sales of infringing products occurred in Minnesota; (2) B&R initiated communications with the Prince Estate on two occasions; (3) B&R advised its clients regarding the legal effect of the Confidentiality Agreement; and (4) the *Calder* effects test provides an alternative ground for personal jurisdiction. (*See* Doc. 344, pp. 10-15.) None of these theories is valid.

**A.  Sales of Infringing Products Does Not Establish Personal Jurisdiction.**

Plaintiffs' "first and foremost" argument is that four alleged downloads of the *Deliverance* EP to residents of Minnesota supports the exercise of personal jurisdiction.

(Doc. 344, p. 10.) Plaintiffs cite two cases in which personal jurisdiction over non-resident defendants in patent infringement claims was found to comport with due process because infringing products had been sold *by the defendant* in the forum state. *Imation Corp. v. Sanho Corp.*, No. 15-1883 (JRT/JSM), 2016 WL 4179363 (D.Minn. Aug. 5, 2016); *WhatRU Holding, LLC v. Bouncing Angels, Inc.*, No. 13-2745 (JNE/TNL), 2014WL641517 (D.Minn. Feb. 19, 2014). In both, the defendant had *directly* sold infringing products to customers in the forum state. *Id.* *1 ("affidavits and exhibits submitted by the parties suggest [defendant] has shipped at least one of its products to Minnesota…."); *WhatRU Holding, LLC*, 2014WL641517 *1 ("One of these [infringing] sales [by the defendant] was to a Minnesota customer for $1,775….) Hence, the sale of an infringing product to a Minnesota resident was deemed activity purposefully directed to the forum.

These cases plainly do not apply where the sale of allegedly infringing products in the forum state was by somebody other than the defendant. Jurisdiction may not be manufactured by the conduct of others. *See Chung v. NANA Development Corp.*, 783 F.2d 1124, 1127 (4th Cir.), *cert. denied*, 479 U.S. 948, 107 S.Ct. 431, 93 L.Ed.2d 381 (1986); *see also Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG,* 646 F.3d 589, 596 (8th Cir. 2011) (holding no specific personal jurisdiction over parent corporation based on sales of its subsidiary). Under such circumstances a defendant has not purposefully availed itself of the forum. *See DeSantis v. Hafner Creations, Inc.*, 949 F.Supp. 419, 425 (E.D.Va.1996).

Plaintiffs concede that sales of the at-issue music were made by RMA and Deliverance, not B&R. (Doc. 344, p. 10.) The Declaration of Lora Friedemann states that RMA sold the *Deliverance* EP to at least four Minnesota residents. (Doc. 346, p. 3, ¶ 15.) These sales were not made by B&R and so are not constitutionally significant.

Plaintiffs argue that the law firm "contributed" to the infringement by advising RMA and Deliverance, LLC to distribute the music while knowing that it would be sold nationwide, including in Minnesota. This argument conflates the merits of plaintiffs' claims with the threshold issue of personal jurisdiction. In order to even get to the contributory infringement claim, personal jurisdiction must be established. Sales of infringing music by RMA and Deliverance in this forum does not supply a basis for personal jurisdiction over B&R.

### B. Communications With The Prince Estate Do Not Create Personal Jurisdiction.

Plaintiffs argue that B&R "initiated communications with the Prince Estate in Minnesota on two occasions." (Doc. 344, p. 11.) On the first, plaintiffs allege that B&R attempted to negotiate a license to exploit the Prince/Boxill works. On the second, plaintiffs allege they demanded that defendants halt the planned release of the music and return it to the Estate. Neither of these communications creates personal jurisdiction here. "Contact by phone or mail is insufficient to justify exercise of personal jurisdiction under the due process clause." *Porter v. Berall*, 293 F.3d 1073, 1075–77 (8th Cir. 2002).

These two communications also fail to support specific personal jurisdiction because the cause of action does not arise from them. Plaintiffs argue that the contributory

5

copyright infringement claim arises "in part from B&R's encouragement of its clients and third parties to distribute the music over the Estate's objections." (Doc. 344, p. 11.) But any encouragement by B&R of its clients could not have occurred in Minnesota.

Plaintiffs argue further that the tortious interference claim arises "in part from B&R's contacts with the Prince Estate in Minnesota, and the Estate's transmission of a copy of the Confidentiality Agreement to B&R, leading to knowledge of the contract and its requirements by B&R and the other Defendants." (Doc. 344, p. 12.) But this is just another example of a communication from someone in Minnesota to someone outside of Minnesota, which cannot serve to manufacture personal jurisdiction in this forum per the authorities cited above. B&R may have gained knowledge of the Confidentiality Agreement because of a communication that came from Minnesota, but B&R was not in Minnesota when it received the communication. If sending a cease and desist letter to a non-forum resident sufficed to create personal jurisdiction in the forum, the due process clause could be declared dead.

### C. Advice of B&R to Its Own Clients Does Not Give Rise to Personal Jurisdiction.

Plaintiffs next argue that the Estate's tortious interference claim arises in part from the advice B&R gave *to its clients* that the Confidentiality Agreement did not require any change in the plan to distribute the music. (Doc. 344, p. 12.) Plaintiffs argue that this amounts to advice about a Minnesota contract governed by Minnesota law. But if this advice was given, it was given outside of Minnesota to non-Minnesotans and is not activity targeted at this forum that could support personal jurisdiction.

**D. The *Calder* Effects Test Does Not Support Personal Jurisdiction.**

Plaintiffs lastly argue that personal jurisdiction exists under the "effects test" of *Calder v. Jones*, 465 U.S. 783 (1984). Plaintiffs say that the effects of the alleged tort, i.e., "diminution in value of Prince's estate," were felt in Minnesota. This argument was anticipated in B&R's initial brief at pp. 11-14. As argued there, the Eighth Circuit "construe[s] the *Calder* effects test narrowly, and holds that, absent additional contacts, mere effects in the forum state are insufficient to confer personal jurisdiction." *Johnson v. Arden*, 614 F.3d 785, 797 (8th Cir. 2010). Thus, the mere fact that effects were felt in Minnesota due to allegedly tortious conduct outside of Minnesota will not support personal jurisdiction under *Calder*. Something more is required.

Specifically, to meet the third element of the *Calder* test, plaintiffs must show that "the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating the defendant expressly aimed its tortious conduct at the forum." *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 266 (3d Cir. 1998). On this issue, plaintiffs offer nothing of substance.

First, plaintiffs cite to this Court's prior order on the motion to dismiss of RMA and Deliverance. *See* Doc. 128. The Court's prior ruling is distinguishable. As argued in B&R's initial brief, the basis for personal jurisdiction over the other defendants was an order of magnitude stronger than it is for B&R. Boxill worked for Prince at his studio in Chanhassen, where he allegedly signed the Confidentiality Agreement. RMA and Deliverance allegedly created a website for the express purpose of selling the allegedly infringing Prince/Boxill recordings, which the Court held was allegedly directed in part at

7

Minnesota. Finally, the Court held that the *Calder* effects test was met because "a diminution in value of Prince's estate that is attributable to the tortious actions of RMA and Deliverance is the primary effect of RMA's and Deliverance's tortious conduct." *Id.* p. 9. None of these circumstances applies to B&R.

Plaintiffs' obligation is to "point to specific activity indicating the defendant expressly aimed its tortious conduct at the forum." *IMO Indus., Inc.*, 155 F.3d at 266. Plaintiffs argue that B&R "issued the Opinion Letter knowing that the Estate disagreed with the conclusion, and disseminated the opinion with the goal of inducing third parties to distribute the music in violation of the Estate's rights." (Doc. 344, pp. 14-15.) Further, they allege that "Brown & Rosen continued to encourage the distribution of the music on the Deliverance EP after receiving the Confidentiality Agreement and the Estate's demand to return the music." *Id.* These allegations fall short of specific activity expressly aimed at the forum. The evidence submitted in support of the allegations is primarily the opinion letters described above, in which B&R advised its own clients about the joint authorship issue. That activity was directed at non-Minnesota clients. Even if the letters were passed on to others, that activity happened outside of Minnesota, which was not the "focal point of the [allegedly] tortious activity." The *Calder* effects test does not support the exercise of personal jurisdiction over B&R.

## II. Plaintiffs' Claims Against B&R Should be Dismissed for Failure to State a Claim.

### A. Plaintiffs' Tortious Interference Claim Fails.

Plaintiffs' claim of tortious interference with contract against B&R (Count Four) should be dismissed because it fails to state a claim on which relief can be granted.

#### 1. B&R is Immune From Third Party Liability.

Plaintiffs concede that B&R performed every act which the TAC complains of in its capacity as a law firm representing a client. They argue that the doctrine prohibiting suit by a non-client against an attorney for actions taken on behalf of its client does not apply to intentional torts. Plaintiff misreads the authorities.

First, it is elementary that plaintiffs' choice to label its claims as intentional torts is not dispositive of their character. The Rule 12 standard requires that plaintiff provide more than "labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The plaintiff must allege *facts* which "raise a right to relief above the speculative level." *Id.* Here, the *facts* alleged in the TAC show that the claims against B&R are not viable because of the attorney-immunity doctrine.

The seminal case, *McDonald v. Stewart*, 289 Minn. 35, 182 N.W.2d 437 (1970), was an appeal from summary judgment granted for an attorney who was accused of tortious interference with a contract, specifically, a purchase agreement of the plaintiff to buy a house from the attorney's client. The plaintiff submitted affidavit evidence that the attorney gave advice and in fact *coerced* his client into breaching the purchase agreement and selling the house to somebody else. The trial court dismissed the case on summary judgment and

the supreme court affirmed because even on the plaintiff's disputed version of the facts, the claims "do not of themselves state a claim in favor of a stranger to that professional relationship." 182 N.W.2d at 440. The court applied the rule that "an attorney acting within the scope of his employment as attorney is immune from liability to third persons for actions arising out of that professional relationship." *Id.*

Plaintiffs argue that *McDonald v. Stewart* and its progeny recognize an "exception" to the general rule of immunity. Indeed, the court in that case said: "This immunity, to be sure, may not be invoked if the attorney, *exceeding the bounds* of this unique agency relationship, either is dominated by his own personal interest or knowingly participates with his client in the perpetration of a fraudulent or unlawful act." *Id.* (emphasis added).[2] Plaintiffs suggest this means that the immunity rule only applies to allegations of *negligent* actions by the lawyer, and not where intentional torts are alleged. But that is not what the case says. It says that to be personally liable, the attorney must "exceed the bounds" of the agency relationship *and* either be dominated by personal interest or knowingly participate with the client in a fraudulent or unlawful act. These are two distinct requirements – stepping outside of the agency relationship *and* committing an intentional tort. Plaintiffs have not alleged that anything B&R did was outside the professional relationship with its

---

[2] The court's support for this proposition included *Hoppe v. Klapperich*, 224 Minn. 224, 28 N.W.2d 780 (1947) ("In the performance of his duties to his client, an attorney enjoys immunity from liability to a third person insofar as he does not materially depart from his character as a quasi-judicial officer charged with responsibility for the administration of justice.").

10

clients. Thus, even if it knowingly participated in tortious conduct that would not forfeit immunity because B&R was acting as an attorney.

Plaintiffs' suggestion that the doctrine applies only to claims of attorney negligence is belied by the fact that it was applied in *McDonald v. Stewart* to a tortious interference claim. It was also applied to a fraud claim in *L & H Airco, Inc. v. Rapistan Corp.*, 446 N.W.2d 372, 380 (Minn. 1989) (holding motion to dismiss should be granted for attorney accused of fraudulently withholding information from client's opposing party).

Plaintiffs' authorities do not support their contrary argument. In *Rucker v. Schmidt*, 768 N.W.2d 408, 416 (Minn. App. 2009), *aff'd*, 794 N.W.2d 114 (Minn. 2011), the plaintiff sued her ex-husband's lawyer for fraudulently submitting evidence to the court resulting in undervaluation of the ex-husband's business. This was directly tortious conduct *of the attorney*. By contrast, plaintiffs here seek to hold B&R liable in tort for conduct *of its clients* allegedly based on advice of the attorney. Thus, *Rucker v. Schmidt* is consistent with the rule that an attorney can only lose immunity when the attorney steps outside the role of an attorney and commits an intentional tort. Similarly, *Schuler v. Meschke*, 435 N.W.2d 156, 164 (Minn. App. 1989) held that an attorney who caused his client to not perform a contract could not be liable for tortious interference absence a showing that he "acted outside the scope of his authority in his representation of [the client]." *Id.*

Plaintiffs rely most heavily on *Eustis v. David Agency, Inc.*, 417 N.W.2d 295, 298 (Minn. App. 1987), in which the court affirmed summary judgment for a lawyer who had been sued by his client's adversary. Plaintiffs state the "holding" of the case is that an attorney may be liable to a non-client "if that attorney acted with fraud, malice or has

11

otherwise committed an intentional tort." In fact, the holding of the case was that the attorney was not liable to the non-client third party for negligence because it owed no duty to a non-client. 417 N.W.2d at 298. The court's stray comment about circumstances in which an attorney *could* become liable to a third party, seized on by plaintiffs, was an incomplete recitation of the law discussed above, which is that the attorney must act in a capacity other than merely as an attorney. This is evident by looking at the case cited by the court in support of the proposition, which stated that an attorney "is only liable where he institutes proceedings without authority from his client, or where he and his client fraudulently conspire to do an illegal act, or where he acts dishonestly, with some sinister view or for some improper purpose of his own which the law considers malicious." *Farmer v. Crosby*, 43 Minn. 459, 461, 45 N.W. 866, 866 (1890), *overruled on other grounds, Erickson v. Minnesota & Ontario Power Co.*, 134 Minn. 209, 158 N.W. 979 (1916). Thus, all the authorities cited by the parties are consistent with the proposition that a lawyer is only liable to a third party for tortious acts if he or she acts outside the attorney-client relationship while committing the tort.

Plaintiffs present evidence that B&R unsuccessfully tried to negotiate a fee agreement with its clients that would have included a flat fee and a percentage of net revenue from the project, but the record is that B&R was paid only a flat fee for its services. The point of this evidence, apparently, is to support plaintiffs' assertion that "Brown & Rosen acted to further the firm's own financial interest and committed two intentional torts in the process." (Doc. 344, p. 17.) But contingent fee agreements are expressly permitted by law. *E.g.,* Minn. R. Prof. Conduct 1.5 (c). The fact that a fee agreement of *any* sort exists

proves that B&R was acting as an attorney with respect to the transaction, and not in some other capacity such as that of an investor. This fact *supports* application of the immunity defense. B&R is immune to suit based on the facts alleged in the TAC.

### 2. Plaintiffs' Tortious Interference Claim Fails For Lack of Intentional Procurement.

Plaintiffs' tortious interference claim argues that B&R "intentionally procured breaches of the Confidentiality Agreement" after learning of it on March 21, 2017. (Doc. 344, p. 18.) B&R argued in its initial memorandum that the allegations do not establish the third element of the tort: the intentional procurement of the contract's breach. Since B&R did not know about the Confidentiality Agreement until after it wrote the legal opinion letters, the opinion letter cannot be said to have *intentionally* induced a breach of the agreement.

In reply, plaintiffs say that the TAC alleges that even after learning of the Confidentiality Agreement, B&R "represented to third parties that Defendant Boxill had the right to release the Deliverance EP" and prepared a license for one prospective customer. (TAC ¶ 87-88, 90). They say that these representations *to third parties* induced a breach of the Confidentiality Agreement *by Boxill*. (TAC ¶ 91.)

But the third parties who allegedly received the representations were not parties to the Confidentiality Agreement. Only Boxill is alleged to be a bound by it. Representations to third parties cannot logically have induced *Boxill* to breach the Confidentiality Agreement. In short, B&R's alleged representations to third parties after learning of the Confidentiality Agreement cannot have induced Boxill to breach it.

### B. Plaintiffs' Indirect Copyright Infringement Claim Fails.

Plaintiffs also fail to state a claim for indirect copyright infringement (Count Six). Plaintiffs concede they are alleging a theory of contributory copyright infringement, which exists where "one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another." *Gershwin Pub. Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971).

#### 1. Boxill's Copyright Registrations Preclude a Finding of "Knowledge of Infringing Activity."

As to the first element of a contributory infringement claim, knowledge of the infringing activity, B&R argued in its initial memorandum that plaintiffs' claim for contributory copyright infringement is not viable because at the time of the actions that give rise to the claim for infringement, and even to this day, Boxill held valid registrations on the Prince Works. (Doc. 335-1, pp. 1-2.) The registrations indicate the work was created in 2017 and was jointly authored by Boxill and Prince. Those facts were presumptively true at the time B&R issued its opinion letters and did the other acts complained of in the TAC. Thus, plaintiffs' conclusory allegation that B&R knew of infringing activity is contradicted by the undisputed written record and may be disregarded.

It is elementary that a claim for copyright infringement requires the plaintiff to prove ownership. *Moore v. Columbia Pictures Indus., Inc.*, 972 F.2d 939, 941 (8th Cir.1992). "In any judicial proceedings the certificate of a registration . . . shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). Because Boxill had registered copyrights that declared him to be a joint author

14

of the Prince/Boxill works, B&R acted at a time when the law supplied a prima facie presumption that Boxill was indeed a joint owner. The presumption could be rebutted, of course. *See Rogers v. Koons,* 960 F.2d 301, 306 (2d Cir. 1992). But plaintiffs do not allege that B&R had any information rebutting the statutory presumption that Boxill was a joint owner of the copyrights. In fact, plaintiffs have produced evidence to the contrary – testimony from B&R's clients that they *denied* there was a written agreement like the Confidentiality Agreement. (Doc. 347, pp. 17, lines 23-24 and p. 18, lines 1-10.). Plaintiffs have not alleged that B&R had information at the time of its allegedly tortious conduct that Boxill's conduct infringed plaintiffs' alleged copyrights. The claim fails for that reason.

Plaintiffs argue that the TAC's mere allegation that B&R had knowledge of infringement must be taken as true at this stage. On the contrary, this Court need not accept conclusory allegations in a pleading where the incontrovertible record – the copyright registrations – show them to be false.

### 2. Plaintiffs Do Not Allege That B&R Induced Infringing Acts.

B&R's initial brief argues that "plaintiffs cannot show any inducement" of alleged infringement, which is the second element of a contributory infringement claim. (Doc. 332, p. 24.) Plaintiffs quote paragraph 105 of the TAC, which identifies the inducement as "distributing legal opinion letters falsely representing that Defendant Boxill had the right to release the Prince Works." The paragraph goes on to criticize the opinion letter for "falsely representing that Defendant had the right to release the Prince Works"; for not "performing adequate investigation or analysis;" and so on. TAC ¶ 105.

But the alleged infringement was not done by the mysterious recipients of the allegedly deficient opinion letters. If any copyright infringing occurred, it had to be by the parties who sold the infringing music, identified in plaintiffs' brief as RMA and Deliverance. (Doc. 344, p. 10.) Thus, any inducement by B&R would have to be directed at them, not at potential buyers. The TAC does not plead facts showing that B&R induced RMA and Deliverance to sell infringing music.

### C. Plaintiffs' Claim for Injunctive Relief Against B&R Fails.

Count One should be dismissed because there is no allegation that B&R (as opposed to its clients) possessed or used property subject to the Confidentiality Agreement.

### D. Plaintiffs' Declaratory Judgment Claim Fails.

Similarly, Count Fourteen should be dismissed because B&R lacks an adverse legal interest in the copyrights at issue.

## CONCLUSION

Brown & Rosen, LLC respectfully asks that the Court grant its motion to dismiss.

Dated October 2, 2018  By:   s/ M. Gregory Simpson
M. Gregory Simpson (#204560)
Julia J. Nierengarten (#0391851)
Meagher & Geer, P.L.L.P.
33 South Sixth Street, Suite 4400
Minneapolis, MN 55402
Telephone: (612) 338-0661
Facsimile: (612) 338-8384
Email: gsimpson@meagher.com
            jnierengarten@meagher.com

**Attorneys for Defendant Brown & Rosen, LLC**

12415386.1