UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Paisley Park Enterprises, Inc. and Comerica Bank & Trust, N.A., as Personal Representative of the Estate of Prince Rogers Nelson,<br><br>Plaintiffs,<br><br>v.<br><br>George Ian Boxill; Rogue Music Alliance, LLC; Deliverance, LLC; David Staley; Gabriel Solomon Wilson; Brown & Rosen, LLC; and Sidebar Legal, PC,<br><br>Defendants. | Case No. 17-cv-1212 (WMW/TNL)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS, GRANTING PLAINTIFFS' MOTION TO SUPPLEMENT THE RECORD, AND GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO DISMISS** |

This case was initiated by Plaintiffs Paisley Park Enterprises, Inc., and Comerica Bank & Trust, N.A., after a dispute arising from the posthumous release of several sound recordings by internationally renowned recording artist Prince Rogers Nelson. Several motions are pending before the Court. Defendant Brown & Rosen, LLC, moves to dismiss the claims against it in Plaintiffs' third amended complaint. (Dkt. 330.) Plaintiffs oppose this motion and move to supplement the record. (Dkt. 360.) In addition, Plaintiffs move to dismiss the tortious interference counterclaim brought by Defendants George Ian Boxill; Rogue Music Alliance, LLC; Deliverance, LLC; David Staley; and Gabriel Solomon Wilson. (Dkts. 188, 306.) For the reasons addressed below, the Court grants Brown & Rosen's motion to dismiss the claims against it and grants Plaintiffs' motion to supplement

the record.  The Court also grants in part and denies in part Plaintiffs' motion to dismiss the tortious interference counterclaim.

## BACKGROUND

This lawsuit arises from the attempted commercialization of previously unreleased recordings of the acclaimed recording artist Prince Rogers Nelson (Prince), who died in 2016.  Plaintiffs are Paisley Park Enterprises, Inc., and Comerica Bank & Trust, N.A., as Personal Representative of the Estate of Prince Rogers Nelson.  Defendants are George Ian Boxill, Rogue Music Alliance, LLC (RMA); Deliverance, LLC; David Staley; Gabriel Solomon Wilson; Brown & Rosen, LLC (B&R); and Sidebar Legal, PC.[1]  Plaintiffs allege that Defendants unlawfully possess and have commercially exploited several of Prince's sound recordings (Prince Recordings).  Defendants counter that Plaintiffs have interfered with Defendants' lawful attempts to release these recordings.

Boxill is a sound engineer who worked with Prince during his lifetime, both as a remodeling consultant for Paisley Park and a sound engineer.  RMA is a music labelling service company operated by Staley and Wilson.  Boxill, RMA, and Sidebar Legal jointly own Deliverance, LLC, an entity created to market and release the Prince Recordings.  B&R is a Massachusetts law firm that provided legal advice to RMA and Boxill regarding the authorship status of the Prince Recordings.

---

[1]  The Clerk of Court entered default against Sidebar Legal on September 12, 2018.

Plaintiffs allege that Boxill executed a Confidentiality Agreement with Paisley Park Enterprises in 2004. The Confidentiality Agreement provides that recordings and other physical materials that resulted from Boxill's work with Prince "shall remain Paisley's sole and exclusive property, shall not be used by [Boxill] in any way whatsoever, and shall be returned to Paisley immediately upon request."[2] Two years later, in 2006, Boxill provided sound engineering services to Prince with respect to the recordings at issue in this lawsuit. Plaintiffs assert that they own copyrights in the Prince Recordings and filed applications to register those copyrights.

After Prince's death in 2016, Defendants sought to distribute the previously unreleased Prince Recordings. On March 16, 2017, B&R drafted a letter to Sidebar Legal, opining that the Prince Recordings were a joint work by Prince and Boxill, and that both Prince and Boxill had rights to the recordings. To support their position that Boxill is *not* a joint author of the Prince Recordings, Plaintiffs sent a copy of the 2004 Confidentiality Agreement to B&R on March 21, 2017. As relevant to Plaintiffs' claims against B&R, Plaintiffs allege that B&R allowed Defendants to circulate the March 16, 2017 opinion letter to third parties, even after being put on notice of the Confidentiality Agreement. Plaintiffs contend that Defendants, in turn, used the opinion letter to convince third parties

---

[2] The Confidentiality Agreement provides that the term "Paisley" includes "Paisley Park Enterprises and all its affiliated and related entities, and the confidentiality obligations to 'Paisley' hereunder shall extend and apply equally to any information or material of any kind concerning Prince Rogers Nelson or any of his family members, agents, business managers, and other representatives."

3

to advertise and distribute the Prince Recordings. Boxill, RMA, and Deliverance began distributing the Prince Recordings online in April 2017.

Plaintiffs initiated a lawsuit and removed the state-court action to this Court on April 18, 2017. Plaintiffs filed the third amended complaint, the subject of B&R's pending motion, on June 14, 2018. In the third amended complaint, Plaintiffs assert four claims against B&R: tortious interference with contract, indirect copyright infringement, and requests for a declaratory judgment and injunctive relief. B&R moves to dismiss Plaintiffs' claims against it for lack of personal jurisdiction or, alternatively, for failure to state a claim on which relief can be granted. Boxill, RMA, Deliverance, Wilson and Staley have answered Plaintiffs' third amended complaint and asserted counterclaims against Plaintiffs. Plaintiffs move to dismiss Defendants' tortious interference counterclaim for failure to state a claim on which relief can be granted.[3]

## ANALYSIS

There are four pending motions before the Court. The Court first addresses the two motions related to the third amended complaint, B&R's motion to dismiss and Plaintiffs'

---

[3] There are two pending motions to dismiss Defendants' tortious interference counterclaim. Plaintiffs first moved to dismiss Defendants' tortious interference counterclaim on April 3, 2018. (Dkt. 188.) Later, Plaintiffs filed a third amended complaint, to which Defendants filed an answer and the same counterclaims. Plaintiffs then renewed their motion to dismiss Defendants' tortious interference counterclaim on July 26, 2018. (Dkt. 306.) As both motions are substantively identical, the Court analyzes the motions together.

motion to supplement the record.[4] The Court then addresses Plaintiffs' two motions to dismiss Defendants' counterclaim.

## I. Motion to Dismiss Plaintiffs' Third Amended Complaint

Defendant B&R moves to dismiss Plaintiffs' third amended complaint for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). To survive a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, a "plaintiff must make a prima facie showing that personal jurisdiction exists." *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591-92 (8th Cir. 2011). This showing requires the plaintiff to plead "sufficient facts to support a reasonable inference that the defendant can be subjected to jurisdiction within the state." *Id.* (alteration omitted) (internal quotation marks omitted). Although the evidence necessary to make this prima facie showing is minimal, this evidence must be tested by the affidavits and exhibits supporting or opposing the motion, and not by the pleadings alone. *Id.* at 592. When deciding whether the plaintiff has succeeded in making this requisite showing, the district court views the evidence in the light most favorable to the plaintiff and resolves all factual conflicts in the plaintiff's favor. *Digi-Tel Holdings, Inc. v. Proteq Telecommunications (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996).

A federal court follows state law when determining the bounds of the federal court's personal jurisdiction. *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). Because Minnesota's long-arm statute extends jurisdiction to the maximum limit permitted by due process, a federal court in Minnesota must determine only whether its exercise of personal

---

[4] See the Court's ruling in footnote 5, *infra*.

jurisdiction comports with due process. *Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc.*, 65 F.3d 1427, 1431 (8th Cir. 1995).

Due process requires a non-resident defendant to have sufficient minimum contacts with the forum state such that the maintenance of the lawsuit does not offend "traditional notions of fair play and substantial justice." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980) (internal quotation marks omitted). Such minimum contacts are sufficient when the defendant has engaged in an act "by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 821 (8th Cir. 2014) (internal quotation marks omitted). The nature of the contact with the forum state must be "such that [the defendant] should reasonably anticipate being haled into court there." *World-Wide Volkswagen*, 444 U.S. at 297. When, as here, a plaintiff asserts that a defendant is subject to specific personal jurisdiction, a district court may adjudicate causes of action "arising from or related to the defendant's actions in the forum state." *Wessels*, 65 F.3d at 1432, n.4.

A. **Minimum Contacts**

B&R argues that Plaintiffs have not made a prima facie showing of specific personal jurisdiction over B&R. Plaintiffs counter that B&R's contact with Minnesota—through sales, conversations with the Prince Estate, and client advice—establish sufficient minimum contacts with the forum. Specifically, Plaintiffs allege that (1) with knowledge that the nationwide distribution would include sales to Minnesota, B&R advised Boxill and

6

RMA to distribute the Prince Recordings; (2) B&R engaged in license negotiations and discussed Boxill's authorship status with the Prince Estate on multiple occasions; and (3) B&R authored an opinion letter regarding a contract involving a Minnesota entity.

The United States Court of Appeals for the Eighth Circuit considers five factors to determine the sufficiency of a defendant's contacts with the forum state: (1) the nature and quality of contacts, (2) the quantity of contacts, (3) the relation of the cause of action to the contacts, (4) the interest of the forum state in providing a forum for its residents, and (5) the convenience of the parties. *Land-O-Nod Co. v. Bassett Furniture Indus., Inc.*, 708 F.2d 1338, 1340 (8th Cir. 1983). The first three factors are given "primary" importance, whereas the last two are "secondary." *See Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010); *accord Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996). For the analysis here, factors one and two warrant further explanation.

The first factor, the nature and quality of a defendant's contacts with the forum state, considers how purposeful the defendant's contact is. A defendant's indirect sale to a forum state generally is insufficient to establish personal jurisdiction. *See Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 112 (1987) (plurality) ("The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State."); *Stanton v. St. Jude Med., Inc.*, 340 F.3d 690, 694 (8th Cir. 2003) (holding that a company's sale to a manufacturer, which in turn sold a product to Minnesota, was insufficient to establish personal jurisdiction over company). But a defendant's *direct* sale to the forum state satisfies the first factor. *See*

*Pope v. Elabo GmbH*, 588 F. Supp. 2d 1008, 1020 (D. Minn. 2008) ("[A] single direct sale by a manufacturer *can* be a sufficient contact to support personal jurisdiction in a suit related to that sale.").

Contact that is "random, fortuitous, and attenuated" does not satisfy the first factor. *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 594 (8th Cir. 2011). For example, scattered communication via emails and phone calls to individuals within the forum state does not justify a court's exercise of personal jurisdiction over the defendant. *Id.* Similarly, a defendant's communication with an out-of-state third party, who in turn has contacts with the forum state, is a contact with the forum state that is too tenuous to satisfy the first factor. *See Nash Finch Co. v. Preston*, 867 F. Supp. 866, 868-69 (D. Minn. 1994). In *Nash Finch*, the district court did not have personal jurisdiction over an out-of-state lawyer who provided an opinion letter to his Minnesota client. *See id.* That the letter approved a deal with a Minnesota corporation or that the Minnesota corporation relied on the letter was unavailing. *See id.* (explaining that a contrary rule would lead to the "absurd" result of making a law firm potentially "susceptible to the jurisdiction of every state in the union").

The second factor in the Eighth Circuit's minimum contacts analysis considers the quantity of a defendant's contacts. But a low volume of contacts will not defeat an otherwise meaningful interaction with the forum state, nor will a high volume of contacts bolster an otherwise deficient connection to the forum state. For example, a single, direct sale may be sufficient to confer personal jurisdiction. *See Pope*, 588 F. Supp. 2d at 1020.

In contrast, even 100 phone calls will not establish jurisdiction if a defendant has no offices, employees, inventory, real estate, or bank accounts in the forum state. *See Burlington*, 97 F.3d at 1103; *see also Porter v. Berall*, 293 F.3d 1073, 1076-77 (8th Cir. 2002) (finding that when defendant did not solicit business from the forum state, subsequent phone calls and mailings did not establish personal jurisdiction).

In support of its motion to dismiss, B&R argues that none of Plaintiffs' proffered contacts is sufficient to confer specific personal jurisdiction over B&R, nor are they when considered together. Of the five minimum-contacts factors, the first factor—the quality and nature of the contacts—most strongly disfavors the Court's exercise of personal jurisdiction over B&R. Although Plaintiffs allege that B&R encouraged Defendants to distribute the Prince Recordings, Plaintiffs concede that B&R did not directly sell the music. Merely encouraging another party to place an item in the stream of commerce does not establish personal jurisdiction over B&R. *See Asahi*, 480 U.S. at 112. Plaintiffs' other allegations concerning phone calls, emails, and the opinion letter also fall short. B&R is not a Minnesota law firm and its clients in this matter were not Minnesota residents. Plaintiffs make no allegations that B&R was compensated by the Prince Estate, travelled to Minnesota, or solicited business in Minnesota. Absent other contacts, B&R's emails, phone calls, and opinion letter are not so purposefully directed to Minnesota to justify this Court's exercise of personal jurisdiction over B&R. *See Burlington*, 97 F.3d at 1103; *Nash Finch Co.*, 867 F. Supp. at 868-69.

The second factor, the quantity of contacts, strongly favors neither Plaintiffs nor B&R. Although Plaintiffs allege numerous phone and email conversations between B&R and the Prince Estate, even a high volume of such contacts does not establish personal jurisdiction where personal jurisdiction otherwise would be lacking. *See Burlington*, 97 F.3d at 1103; *Porter*, 293 F.3d at 1076. Plaintiffs' allegations that there were "at least four purchasers" of the Prince Recordings in Minnesota also is of limited significance, as B&R did not directly sell to any of these customers.

The third factor favors Plaintiffs. B&R's alleged conduct relates to the causes of action asserted in the third amended complaint: tortious interference with contract, indirect copyright infringement, and declaratory judgment. The tortious interference with contract claim arises from B&R's alleged notice of and response to the Confidentiality Agreement. The indirect copyright infringement claim and requested declaratory relief relate to B&R's alleged encouragement of the distribution of the Prince Recordings.

Likewise, the final two factors favor Plaintiffs. Because the Prince Estate is located in Minnesota, the state is both an interested and convenient forum. However, a state's interest in the litigation and convenience as a forum are of limited significance for the purpose of this analysis. *See Burlington*, 97 F.3d at 1102.

In summary, because the nature and quality of the asserted contacts weigh strongly against the Court's exercise of personal jurisdiction over B&R, Plaintiffs have not made a prima facie showing that B&R has sufficient minimum contacts with Minnesota.

## B. *Calder* Test

Plaintiffs allege that B&R committed intentional torts directed at Minnesota which, in combination with the contacts described above, justify the Court's exercise of personal jurisdiction over B&R.

A defendant's tortious conduct can be a basis for personal jurisdiction. *Calder v. Jones*, 465 U.S. 783, 790 (1984). To establish personal jurisdiction under an intentional tort theory, a plaintiff must make a prima facie showing that "the defendant's acts (1) were intentional, (2) were 'uniquely' or expressly aimed at the forum state, and (3) caused harm, the brunt of which was suffered—and which the defendant knew was likely to be suffered—there." *Zumbro, Inc. v. Cal. Nat. Prods.*, 861 F. Supp. 773, 782-83 (D. Minn. 1994). The Eighth Circuit considers the *Calder* test in combination with the standard five-factor analysis. *See Johnson*, 614 F.3d at 797 ("We therefore construe the *Calder* effects test narrowly, and hold that, absent additional contacts, mere effects in the forum state are insufficient to confer personal jurisdiction.").

The Eighth Circuit has acknowledged the limited reach of *Calder*, accepting that businesses often promote their products and solicit customers at the expense of competitors. Although such actions "may have an effect on a competitor, absent additional contacts, this effect alone will not be sufficient to bestow personal jurisdiction." *See Hicklin Eng'g, Inc. v. Aidco, Inc.*, 959 F.2d 738, 739 (8th Cir. 1992) (holding that allegedly defamatory statements about a business in Iowa, sent to out-of-state customers, did not invoke *Calder* even though competitive effects were felt in Iowa). Instead, personal

jurisdiction under *Calder* is appropriate when a defendant purposefully targets the forum state, such as by directly selling an infringing product to retailers or customers in that state. *See, e.g.*, *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1391 (8th Cir. 1991) (affirming exercise of personal jurisdiction over out-of-state company because company was aware of competing trademark yet still used its infringing trademark when selling to retailers and customers in the forum state).

B&R argues that its conduct was not expressly aimed at Minnesota. Plaintiffs allege that B&R committed intentional torts by allowing its opinion letter to be circulated after B&R was aware of the Confidentiality Agreement, thereby encouraging the unlawful distribution of the Prince Recordings. And Plaintiffs maintain that B&R knew its actions would primarily affect the Prince Estate, a Minnesota entity. Here, as in *Hicklin*, B&R is an out-of-state entity that distributed a letter to out-of-state recipients. Although competitive effects were felt in Minnesota, this alone is not enough to invoke the Court's personal jurisdiction. *See* 959 F.2d at 739. Plaintiffs' reliance on *Dakota* is unavailing. Unlike directly selling a product with an infringing trademark, B&R passively allowed the continued circulation of its opinion letter to third parties who, in turn, decided to distribute and promote the Prince Recordings. Mere effects in Minnesota do not confer personal jurisdiction over B&R. *See Johnson*, 614 F.3d at 797.

In sum, the contacts and conduct that Plaintiffs allege are insufficient to establish that B&R has purposefully availed itself of Minnesota's laws. An out-of-state law firm provided advice to out-of-state clients. The advice happened to concern a Minnesota entity

and several sales happened to be to Minnesota residents. But to subject B&R to this Court's personal jurisdiction under these circumstances would discourage the dissemination of legal advice and expand the reach of personal jurisdiction well beyond its current limits. Accordingly, the Court dismisses without prejudice the claims in the third amended complaint against B&R.[5]

## II. Motion to Dismiss Tortious Interference Counterclaim

Boxill, Deliverance, RMA, Wilson, and Staley (collectively, "Defendants") assert a counterclaim for tortious interference with contracts and prospective economic advantage.[6] Defendants allege that Plaintiffs misrepresented legal documents to Defendants' business partners, which interfered with Defendants' efforts to sell the Prince Recordings. Plaintiffs move to dismiss Defendants' counterclaim for failure to state a claim for either tortious interference with contracts or tortious interference with prospective economic advantage. Fed. R. Civ. P. 12(b)(6).

To survive a Rule 12(b)(6) motion to dismiss, a claim must allege sufficient facts such that, when accepted as true, a facially plausible claim for relief is stated. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When determining whether the claim is sufficient, a

---

[5] The Court grants Plaintiffs' motion to supplement the record with a newly produced document for the limited purpose of this motion to dismiss. (Dkt. 360.) A careful review of the supplemental document does not change the Court's determination that B&R's contacts with Minnesota are insufficient to establish personal jurisdiction.

[6] Defendants combine the tortious interference with contracts claim and tortious interference with prospective economic advantage claim in a single count. Because tortious interference with contracts and tortious interference with prospective economic advantage have distinct elements, the Court analyzes each claim separately.

13

district court accepts as true all of the factual allegations in the claim and draws all reasonable inferences in the nonmoving party's favor. *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010); *see also Reis v. Walker*, 491 F.3d 868, 870 (8th Cir. 2007) (applying Rule 12(b)(6) standards to motion to dismiss counterclaim). The factual allegations need not be detailed, but they must be sufficient to "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" are insufficient; and legal conclusions couched as factual allegations may be disregarded. *See id.* at 555. A district court may consider documents that are necessarily embraced by the claim when considering a Rule 12(b)(6) motion to dismiss. *See Kushner v. Beverly Enters.*, 317 F.3d 820, 831 (8th Cir. 2003).

### A. Tortious Interference with Contracts

Defendants allege that Plaintiffs misrepresented the scope of both the Confidentiality Agreement and an April 19, 2017 temporary restraining order (TRO) to Defendants' business partners. After misrepresenting these legal documents, Defendants contend, Plaintiffs improperly threatened to pursue legal action against any of Defendants' business partners that continued distributing the Prince Recordings.

To state a claim for tortious interference with a contract, a party must allege (1) the existence of a contract, (2) the accused's knowledge of the contract, (3) intentional procurement of its breach, (4) the absence of justification, and (5) damages. *Kallok v.*

*Medtronic, Inc.*, 573 N.W.2d 356, 362 (Minn. 1998). Alleged negotiations or agreements in principal are not sufficient. *See Bouten v. Richard Miller Homes, Inc.*, 321 N.W.2d 895, 900 (Minn. 1982) (concluding that, because the contract at issue was void, it did not satisfy the first element of the tortious interference claim).

Plaintiffs argue that Defendants have not alleged the existence of an actual contract. Defendants identify various business partners with whom they had negotiated for the Prince Recordings to be promoted and advertised. But negotiations and preliminary agreements do not satisfy the first element of a tortious interference with contracts claim. *See id.* Defendants fail to identify any agreement with its business partners that is an actual contract. Without additional allegations, Defendants have not stated a cognizable claim.

Accordingly, the Court grants Plaintiffs' motion to dismiss Defendants' counterclaim for tortious interference with contracts, and dismisses that counterclaim without prejudice.[7]

---

[7] Plaintiffs argue that dismissal of the counterclaim should be with prejudice because Defendants have had two previous attempts to state a claim for relief properly. A district court, in its discretion, may dismiss a pleading for failure to state a claim with or without prejudice. *See Orr v. Clements*, 688 F.3d 463, 465 (8th Cir. 2012). Dismissal with prejudice may be warranted if amending the pleading would be futile. *See Pet Quarters, Inc. v. Depository Tr. & Clearing Corp.*, 559 F.3d 772, 782 (8th Cir. 2009). Here, although Defendants have asserted this counterclaim on two prior occasions, this is the first instance that Defendants' counterclaim is the subject of a judicial ruling. And there is no indication in the record that it would be impossible for Defendants to adequately plead a tortious interference with contracts claim. For these reasons, the dismissal is without prejudice.

### B. Tortious Interference with Prospective Economic Advantage

Plaintiffs also argue that Defendants have not stated a claim for tortious interference with prospective economic advantage. Defendants allege in their counterclaim that, but for Plaintiffs' misrepresentation of the Confidentiality Agreement and TRO, Defendants "would have realized additional advantage and benefit from both current business relationships and future business relationships."

To recover under Minnesota law for tortious interference with prospective economic advantage, Defendants must prove (1) the existence of a reasonable expectation of economic advantage; (2) Plaintiffs' knowledge of that expectation; (3) Plaintiffs' intentional interference with Defendants' expectation, such that the interference was either independently tortious or in violation of a state or federal statute or regulation; (4) a reasonable probability that Defendants would have realized the economic advantage or benefit in the absence of Plaintiffs' wrongful act; and (5) damages. *Gieseke ex rel. Diversified Water Diversion, Inc. v. IDCA, Inc.*, 844 N.W.2d 210, 219 (Minn. 2014). Defendants must specifically identify the third party that is the source of the expected future economic relationship because "a projection of future business or unidentified customers, without more, is insufficient as a matter of law." *Id.* at 221-22.

Plaintiffs' argument is twofold. First, Plaintiffs argue that Defendants have not stated a claim on which relief can be granted because they have not identified a specific business partner or customer with whom Defendants could expect any future economic advantage. But Plaintiffs rely on *Gieseke*, which provides only the elements required to

16

*prove* tortious interference with prospective economic advantage, not the elements required to *plead* that claim. *See id.* It is not clear from the *Gieseke* decision that identifying a specific business partner or customer is necessary to survive a motion to dismiss. However, even assuming without deciding that identification of a specific business partner or customer is a pleading requirement, Defendants satisfy this requirement. In their counterclaim, Defendants allege that one of the Prince Recordings, "Deliverance," was the top-selling pre-order on iTunes before Apple removed the song from its platform and the second best-selling album pre-order on Amazon. These allegations clearly identify Apple and Amazon as specific business partners with whom Defendants expected to have an ongoing relationship. Accordingly, Plaintiffs' first argument fails.

Second, Plaintiffs argue that Defendants have not alleged an independently tortious act. Plaintiffs maintain that any interference with Defendants' business partners was justified because Plaintiffs are entitled to enforce their intellectual property rights. Plaintiffs rely on *Select Comfort Corp. v. Sleep Better Store, LLC*, 838 F. Supp. 2d 889, 894 (D. Minn. 2012), which held that a party's cease-and-desist letter, sent in good faith, did not constitute tortious interference. But *Select Comfort* is inapposite here because Defendants allege that Plaintiffs acted in bad faith. Defendants specifically allege that Plaintiffs intentionally misrepresented the Confidentiality Agreement and TRO. And by doing so, Plaintiffs knowingly made unfounded threats to take legal action against entities that distributed certain Prince Recordings. Accepting Defendants' allegations as true, as the Court must for the purpose of this motion to dismiss, Defendants have alleged an

independently tortious act. The third element of a tortious interference with prospective economic advantage claim is met.

Plaintiffs do not challenge the sufficiency of the pleadings with respect to the other elements of Defendants' tortious interference with prospective economic advantage counterclaim, nor does the Court determine that Defendants' allegations are lacking. Accordingly, the Court denies Plaintiffs' motion to dismiss Defendants' tortious interference with prospective economic advantage counterclaim.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1. Plaintiffs' motion to supplement the record, (Dkt. 360), is **GRANTED**.

2. Defendant Brown & Rosen, LLC's motion to dismiss the third amended complaint for lack of personal jurisdiction, (Dkt. 330), is **GRANTED**.

3. Plaintiffs' third amended complaint, (Dkt. 262), is **DISMISSED WITHOUT PREJUDICE** with respect to Defendant Brown & Rosen, LLC.

4. Plaintiffs' motion to dismiss Defendants' counterclaim, (Dkt. 306), is **GRANTED** as to the tortious interference with contracts counterclaim and **DENIED** as to the tortious interference with prospective economic advantage counterclaim. Defendants' counterclaim for tortious interference with contracts is **DISMISSED WITHOUT PREJUDICE**.

5. Plaintiffs' earlier motion to dismiss Defendants' counterclaim, (Dkt. 188), is **DENIED AS MOOT**.


Dated: February 22, 2019
s/Wilhelmina M. Wright
Wilhelmina M. Wright
United States District Judge