Paisley Park Enterprises, Inc. and Comerica
Bank & Trust, N.A. as Personal
Representative for the Estate of Prince
Rogers Nelson,

        Plaintiffs,

                                 Case No. 17-cv-1212 (WMW/TNL)

v.

George Ian Boxill, Rogue Music Alliance,
LLC, Deliverance, LLC, David Staley,
Gabriel Solomon Wilson, Brown & Rosen,                   **ORDER**
LLC and Sidebar Legal, PC,

        Defendants,

---

Anne R. Rondoni Tavernier, Grant D. Fairbairn, and Lora Mitchell Friedemann,
Fredrikson & Byron, PA, 200 South Sixth Street, Suite 4000, Minneapolis, MN 55402
(for Plaintiffs);

Kieran D. Hartley, Rastegar Law Group, 22760 Hawthorne Boulevard, Suite 200,
Torrance CA 90505 and Paul Allen Godfread, Godfread Law Firm, 6043 Hudson Road,
Suite 305, Woodbury, MN 55125 (for Defendants George Ian Boxill, Rogue Music
Alliance, LLC, Deliverance, LLC, David Staley, and Gabriel Solomon Wilson); and

M. Gregory Simpson, Meagher & Geer, PLLP, 33 South Sixth Street, Suite 4400,
Minneapolis, MN 55402 (for Defendant Brown and Rosen LLC).

---

       This matter is before the Court on Plaintiffs' Motion for Sanctions Due to Spoliation

of Evidence (ECF No. 383) and Plaintiffs' Motion to Compel Discovery from Defendant

Brown & Rosen, LLC (ECF No. 408). For the reasons set forth below, the Court will grant

in part and deny in part Plaintiffs' Motion for Sanctions Due to Spoliation of Evidence and

deny as moot Plaintiffs' Motion to Compel Discovery from Defendant Brown & Rosen.

## I. BACKGROUND

Plaintiff Comerica Bank & Trust, N.A. is the personal representative for the estate of the late internationally known musician Prince Rogers Nelson ("Prince" and "Prince Estate"). Third Amend. Compl. ¶ 2 (ECF No. 262). The Prince Estate owns Plaintiff Paisley Park Enterprises, Inc. *Id*. The Prince Estate has an interest in various songs created by Prince, including those not released to the public. *Id*. at ¶ 3. Plaintiffs allege that Defendants have taken steps to release songs that Prince created but did not previously release to the public without the permission of the Prince Estate. In particular, Plaintiffs allege that Defendant George Ian Boxill, a sound engineer who worked with Prince previously, took tracks of certain songs that he worked on with Prince, edited, and released those songs with the assistance of Defendant Rogue Music Alliance ("RMA"), an LLC whose principals are David Staley and Gabriel Solomon Wilson. (ECF No. 388, p. 1-2). Plaintiffs also allege that Boxill, Staley, and Wilson formed Deliverance, LLC to release the music and that the law firms Sidebar Legal, PC and Brown & Rosen, LLC ("Brown") assisted in the infringement. (*Id*. at pp. 1-2).

On February 11, 2017, before releasing the music at issue in this lawsuit, Staley sent an e-mail to Nate Yetton of Sensibility Music wherein Staley indicated that Boxill had indemnified RMA in case the Prince Estate chose to challenge the release of the music. (ECF No. 389). On March 16, 2017 after learning that Defendants intended to release the music, the Prince Estate sent a cease and desist letter. (ECF No. 388, p. 2). Plaintiffs followed up with a second letter demanding that the music be returned. (ECF No. 388, p. 2). They then filed suit against Boxill in state court on April 14, 2017. (ECF No. 388, p. 2;

ECF No. 2). Boxill removed the lawsuit to federal court on April 18, 2017. (ECF No. 1). Plaintiffs filed an amended complaint on April 24, 2017, in which they also named RMA and Deliverance as defendants (ECF No. 36), a second amended complaint on December 21, 2017 (ECF No. 150), and a third amended complaint on June 14, 2018, in which they added Staley, Wilson and the two law firms as defendants. (ECF No. 262).

In December 2017, after Plaintiffs filed their first amended complaint, they, RMA, Deliverance, and Boxill, stipulated to certain protocols regarding the discovery of electronically stored information ("ESI"). (ECF No. 141). In that stipulation, the parties indicated that they had taken "reasonable steps to preserve reasonably accessible sources of ESI." (ECF No. 141, p. 1). The Court indicated that it would enforce the parties' agreement but did not enter an order concerning the stipulation. (ECF No. 145, p. 1).

The Court then issued its pretrial scheduling order on January 10, 2018, (ECF No. 156). In that order, the Court directed the parties to preserve "all electronic documents that bear on any claims, defenses, or the subject matter of this lawsuit." (ECF No. 156, p. 2). The Court warned failure to comply with any provision of this order would subject the non-complying party to "any and all appropriate remedies," including sanctions, assessment of costs, fines and attorneys' fees and disbursements, and any other relief the Court might deem appropriate. (ECF No. 156, p. 5). The Court issued amended pretrial scheduling orders on June 27, 2018 and October 4, 2018. (ECF Nos. 282 & 357). Each order contained language regarding ESI discovery and the potential consequences of a violation of the Court's order. (ECF Nos. 282 & 357).

Plaintiffs served written discovery on RMA and Deliverance on December 1, 2017. (ECF No. 388, p. 2). Included in their discovery were requests for the production of all documents related to the timing, circumstances, format, and content of the music at issue in this lawsuit, communications with any third-party regarding Boxill, Prince, and items at issue in this lawsuit, and all documents related to Boxill, Prince, the music at issue here, Paisley Park Enterprises, and this lawsuit. (ECF No. 388-1, pp. 8, 9, 11, 21, 22, 24). Plaintiffs indicated in their requests that the term document had the broadest possible meaning ascribed to it under Rule 34. (ECF No. 388-1, p. 2, 15). Plaintiffs sent a letter outlining certain deficiencies with RMA and Deliverance's responses on March 2, 2018, including the failure to produce text messages responsive to their requests. (ECF No. 388-1, pp. 28-29).

Shortly thereafter, Plaintiffs received a third-party production of documents from a public relations firm that Defendants had hired. (ECF No. 388, p. 3). Included in that production were text messages that Wilson sent to an employee of the public relations firm. (ECF No. 388, p. 3). Plaintiffs then filed a motion to compel discovery from RMA, seeking production of text messages that Staley and Wilson sent to each other and third parties (ECF No. 266, p. 5). The Court ordered that Defendants produce all responsive text messages on July 19, 2018. (ECF No. 388-2, p. 32).

Counsel for Plaintiffs, Wilson, Staley, RMA and Deliverance then held a meet-and-confer on September 21, 2018. (ECF No. 388, p. 3). There, counsel for Wilson, Staley, RMA and Deliverance indicated that they could not produce responsive text messages because they had not preserved their text messages. (ECF No. 388, pp. 3-4). They indicated

that text messages had not been preserved because Staley and Wilson did not disengage the auto-delete function on their phones and because Staley had wiped and discarded his phone in October 2017 and Wilson had wiped and discarded his phone in January 2018 and then wiped and discard his new phone in May 2018. (ECF No. 388, p. 4; ECF No. 395-2, p. 4). They also indicated that no back-up data existed for either phone, though they were later able to produce a screenshot captured from Staley's phone, which he had uploaded to his cloud storage space. (ECF No. 388, p. 4; ECF No. 395-1, p. 8-9). An e-discovery lawyer for Plaintiffs' law firm indicates that had Staley and Wilson not wiped and discarded their phones, it might have been possible to recover the deleted messages. (ECF No. 387, p. 2).

Plaintiffs also served written discovery on Brown, the law firm that issued an opinion letter regarding Boxill's right to release the music. (ECF No. 411-1, p. 2-3). In those requests, Plaintiffs sought discovery regarding information and documents that Brown considered prior to writing the opinion letter, identification of evidence regarding Prince's intent, research and analysis that Brown conducted regarding the music at issue here, and issues related to Brown's competency to author the opinion. (ECF no. 411-1, pp. 5, 7-14). Plaintiffs also sought the production of documents related to Brown's experience in teaching intellectual property law. (ECF No. 411-1, ECF Nos. 28-29). Brown objected to each of those requests on grounds of irrelevancy, privilege, or the fact that the opinion letter spoke for itself.

Plaintiffs have filed a motion for sanctions against RMA, Deliverance, Staley, and Wilson and a motion to compel against Brown. RMA, Deliverance, Staley, and Wilson filed a memorandum in response on November 6, 2018 (ECF No. 394) and Brown filed a

response on January 4, 2019. (ECF No. 416). The Court heard argument on both matters on January 15, 2019 and took both under advisement.

## II.  ANALYSIS

### A.  Motion for Sanctions

Plaintiffs first move to sanction RMA, Deliverance, Staley, and Wilson ("RMA Defendants") for the destruction of text messages. They seek sanctions under Rule 37(e)(1), 37(e)(2) and 37(b)(2)(A). The RMA Defendants argue that they took reasonable steps to preserve relevant evidence, that Plaintiffs failed to show prejudice, and that the record shows that they did not act with intent to deprive Plaintiffs of relevant evidence. The RMA Defendants do not dispute, however, that some evidence has been lost and likely cannot be replaced in its original form.

The Federal Rules of Civil Procedure require that parties take reasonable steps to preserve ESI that is relevant to litigation. Fed. R. Civ. P. 37(e). The Court may sanction a party for failure for failure to do so, provided that the lost ESI cannot be restored or replaced through additional discovery. *Id*. Rule 37(e) makes two types of sanctions available to the Court. Under Rule 37(e)(1), if the adverse party has suffered prejudice from the spoliation of evidence, the Court may order whatever sanctions are necessary to cure the prejudice. But under Rule 37(e)(2), if the Court finds that the party "acted with the intent to deprive another party of the information's use in the litigation," the Court may order more severe sanctions, including a presumption that the lost information was unfavorable to the party or an instruction to the jury that it "may or must presume the information was unfavorable to the party." The Court may also sanction a party for failing to obey a discovery order.

Fed. R. Civ. P. 37(b). Sanctions available under Rule 37(b) include an order directing that certain designated facts be taken as established for purposes of the action, payment of reasonable expenses, and civil contempt of court.

A party is obligated to preserve evidence once the party knows or should know that the evidence is relevant to future or current litigation. *E*Trade Sec. LLC v. Deutsche Bank AG*, 230 F.R.D. 582, 588 (D. Minn. 2005); *see also* Fed. R. Civ. P. 37(e), advisory committee's note to 2015 amendment (stating that rule requires preservation of evidence when litigation is reasonably foreseeable). "A variety of events may alert a party to the prospect of litigation." Fed. R. Civ. P. 37(e), advisory committee's note to 2015 amendment. "The duty to preserve relevant evidence must be viewed from the perspective of the party with control of the evidence." *Alabama Aircraft Indus., Inc. v. Boeing Co.*, 319 F.R.D. 730, 740 (N.D. Ala. 2017).

In this case, the Court finds the duty to preserve evidence arose no later than February 11, 2017,[1] when Staley sent an e-mail regarding his plans to release the music at issue here. In that e-mail, Staley acknowledged the riskiness of his and RMA's position and indicated that the Prince Estate could challenge their actions. Staley referred specifically to the possibility of litigation in that e-mail, noting that RMA was not concerned by a lawsuit because it had been indemnified by Boxill. It is apparent, based on

---

[1] Plaintiffs also argue the duty to preserve may have attached as early as June 2016, the date of certain documents that the RMA Defendants withheld on the basis of work product privilege. The Court has reviewed the privilege log attached to Plaintiffs' motion (ECF No. 388-3, p. 2) and cannot conclude based on those entries that the duty to preserve attached at that time. It is possible that the RMA Defendants claimed work product privilege on those documents as a result of litigation that Defendants anticipated regarding the formation of their LLC.

this letter, that the RMA Defendants anticipated litigation following their release of the Prince music. The duty to preserve therefore attached on February 11, 2017.

The next question the Court must consider is whether the RMA Defendants took reasonable steps to preserve relevant ESI. Even when litigation is reasonably foreseeable, a party is under no obligation "to keep every shred of paper, every e-mail or electronic document and every backup tape." *In re Ethicon, Inc. Pelvic Repair Sys. Prod. Liability Lit.*, 299 F.R.D. 502, 517-518 (S.D. W. Va. 2014) (citation and internal quotation marks omitted); *see also* Fed. R. Civ. P. 37(e), advisory committee's note to 2015 amendment (stating the scope of information that should be preserved often is uncertain). The "duty to preserve evidence extends to those [persons] likely to have relevant information – the key players in the case, and applies to unique, relevant evidence that might be useful to the adversary." *Ethicon*, 299 F.R.D. at 517 (citation and internal quotation marks omitted).

There is no doubt that Staley and Wilson are the types of persons likely to have relevant information, given their status as principals of RMA and owners of Deliverance. Nor can there be any reasonable dispute as to the fact that their text messages were likely to contain information relevant to this litigation. In fact, Boxill and other third parties produced text messages that they sent to or received from Staley and Wilson. Neither party disputes that those text messages were relevant to this litigation. Thus, the RMA Defendants were required to take reasonable steps to preserve Staley and Wilson's text messages.

The RMA Defendants did not do so. First, Staley and Wilson did not suspend the auto-erase function on their phones. Nor did they put in place a litigation hold to ensure

that they preserved text messages. The principles of the "standard reasonableness framework" require a party to "suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." *Steves and Sons, Inc. v. JELD-WEN, Inc.*, 327 F.R.D. 96, 108 (E.D. Va. 2018) (citation and internal quotation marks omitted). It takes, at most, only a few minutes to disengage the auto-delete function on a cell phone. It is apparent, based on Staley's affidavit, that he and Wilson could have taken advantage of relatively simple options to ensure that their text messages were backed up to cloud storage. (ECF No. 395, pp. 7-9). These processes would have cost the RMA Defendants little, particularly in comparison to the importance of the issues at stake and the amount in controversy here. Failure to follow the simple steps detailed above alone is sufficient to show that Defendants acted unreasonably.

But that is not all the RMA Defendants did and did not do. Most troubling of all, they *wiped and destroyed* their phones after Deliverance and RMA had been sued, and, in the second instance for Wilson, after the Court ordered the parties to preserve all relevant electronic information, after the parties had entered into an agreement regarding the preservation and production of ESI, and after Plaintiffs had sent Defendants a letter alerting them to the fact they needed to produce their text messages. As Plaintiffs note, had Staley and Wilson not destroyed their phones, it is possible that Plaintiffs might have been able to recover the missing text messages by use of the "cloud" function or through consultation with a software expert. But the content will never be known because of Staley and Wilson's intentional acts. The RMA Defendants' failure to even consider whether Staley and Wilson's phones might have discoverable information before destroying them was

completely unreasonable. This is even more egregious because litigation had already commenced.

The RMA Defendants make a number of arguments as to why their decision not to preserve text messages was reasonable. None of these arguments is persuasive. First, they argue that Plaintiffs did not issue a litigation hold letter to Defendants informing them that Plaintiffs were likely to seek discovery on text messages. Rule 37 requires the party from whom the information is sought to ensure they are taking reasonable steps to preserve evidence. *See* Fed. R. Civ. P. 37(e) The rule does not require that the requesting party issue a document preservation letter identifying all types of ESI that it might seek in the future. That burden rests with the preserving party. *See id.* The fact that Plaintiffs did not *sua sponte* issue a litigation hold letter to RMA Defendants is of little or no relevance here.

Second, the RMA Defendants surprisingly argue they could not possibly be expected to know that they should preserve text messages. They further note that their previous counsel never told them to preserve text messages and that the document requests that Plaintiffs served did not identify text messages as a form of document sought. But parties are responsible for the conduct of their attorneys; an adverse party is not required to bear the burden of misconduct committed by the opposing side's counsel. *Siems v. City of Minneapolis*, 560 F.3d 824, 827 (8th Cir. 2009) (affirming sanctions where the "record does not contain any evidence that [the party] contributed in any way to the dilatory actions of his counsel"); *Comiskey v. JFTJ Corp.*, 989 F.2d 1007, 1010 (8th Cir. 1993) (affirming default judgment sanction for discovery violations that were the sole fault of party's prior counsel); *Boogaerts v. Bank of Bradley*, 961 F.2d 765, 768 (8th Cir. 1992) ("Although the

sanction was imposed against the plaintiff, it is of no consequence that the discovery abuse perpetrated was by counsel rather than the plaintiff-client."). And Rule 34 requires the production of any document, including, "data or data compilations—stored in any medium from which information can be obtained . . . directly." Fed. R. Civ. P. 34(a)(1)(A). It is well established that text messages "fit comfortably within the scope of materials that a party may request under Rule 34." *Flagg v. City of Detroit*, 252 F.R.D. 346, 352-53 (E.D. Mich. 2008); *see Lalumiere v. Willow Springs Care, Inc.*, No. 16-cv-3133, 2017 WL 6943148 *2 (E.D. Wa. Sept. 18, 2017) (concluding text messages may be requested under Rule 34); *see also* Fed. R. Civ. P. 34, advisory committee's note to 2006 amendments (explaining that Rule 34 plainly encompasses electronic communications and copies of such communications preserved in electronic form). In the contemporary world of communications, even leaving out the potential and reality of finding the modern-day litigation equivalent of a "smoking gun" in text messages, e-mails, and possibly other social media, the Court is baffled as to how Defendants can reasonably claim to believe that their text messages would be immune from discovery.

Third, the RMA Defendants also argue that given the personal nature of their phones, it is unreasonable for the Court to expect them to know they should preserve information contained on those devices. In support of this claim, they note that they provided discovery from other sources of ESI, including their work computers. They also note that they cooperated with a forensic data firm to ensure Plaintiffs obtained everything they sought. They further claim that Plaintiffs never asked to inspect their cell phones during this process.

This argument too is without merit. It is obvious, based on text messages that other parties produced in this litigation, that Staley and Wilson used their personal cell phones to conduct the business of RMA and Deliverance. It is not Plaintiffs' responsibility to question why RMA Defendants did not produce any text messages; in fact, it would be reasonable for Plaintiffs to assume that Defendants' failure to do so was on account of the fact that no such text messages existed. This is because the RMA Defendants *are the only ones* who would know the extent that they used their personal cell phones for RMA and Deliverance business at the time they knew or should have reasonably known that litigation was not just possible, but likely, or after Plaintiffs filed suit or served their discovery requests.

Furthermore, the RMA Defendants do not get to select what evidence they want to produce, or from what sources. They must produce all responsive documents or seek relief from the court. *See* Fed. R. Civ. P. 26(c) (outlining process for obtaining protective order). In fact, in cases that predate Rule 37(e) in its current form, courts had concluded that the failure to preserve some types of ESI while destroying others is a reasonable basis to infer that the destroying party acted with bad faith. *Stevenson v. Union Pacific R. Co.*, 354 F.3d 739, 748 (8th Cir. 2004). The Court will not permit the RMA Defendants to claim that it was reasonable to assume data on their personal cell phones would not be subject to discovery when the record clearly shows that they used their phones for work purposes. As will be discussed more fully later, the record here establishes that the RMA Defendants acted willfully and with intent to destroy discoverable information.

Finally, Wilson and Staley argue that sanctions should not be imposed against them in their personal capacities because they were not named as defendants in this lawsuit until June 2018. But the duty to preserve still attached upon both individuals in February 2017, when they recognized litigation to be a possibility upon release of the music at issue here. Nothing in the intervening months relieved either individual of this duty. Both Staley and Wilson participated in the destruction of the text messages. They cite to no authority to support the proposition that a spoliation motion cannot be brought against an individual simply because the conduct occurred long before they were named as individual defendants.[2]

Having concluded that the RMA Defendants did not take reasonable steps to preserve and in fact intended to destroy relevant ESI, the Court must next consider whether the lost ESI can be restored or replaced from any other source. Fed. R. Civ. P. 37(e). Because ESI "often exists in multiple locations, loss from one source may often be harmless when substitute information can be found elsewhere." Fed. R. Civ. P. 37, advisory committee's note to 2015 amendments. For example, Rule 37 sanctions are not available when "e-mails are lost because one custodian deletes them, but they remain available in the records of another custodian." *CAT3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 497 (S.D.N.Y. 2016). Logically, the same principle holds true for text messages.

While it is true that Plaintiffs have obtained text messages that Boxill and other parties sent to or received from Staley and Wilson, that does not mean that all responsive

---

[2] The fact that Boxill preserved his text messages properly does not establish that the RMA Defendants acted inadvertently. It merely suggests that Boxill understood his obligations under the Federal Rules of Civil Procedure.

text messages have been recovered or that a complete record of those conversations is available. In particular, because Wilson and Staley wiped and destroyed their phones, Plaintiffs are unable to recover text messages that the two individuals sent only to each other. Nor can they recover text messages that Staley and Wilson sent to third parties to whom Plaintiff did not send Rule 45 subpoenas (likely because they were not aware that Wilson or Staley communicated with those persons). The RMA Defendants do not dispute that text messages sent between Staley and Wilson are no longer recoverable.

The fact that the information contained in the missing text messages might also be cumulative to e-mails that the RMA Defendants already produced is insufficient to restore or replace the text messages. First, it will never be known whether such information would or would not have been cumulative because it is impossible to know what it was or to whom it may have been communicated. Second, even when the information lost is "cumulative to some extent," the loss of the information still has an impact because Plaintiffs "cannot present the overwhelming quantity of evidence [they] otherwise would have to support [their] case." *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 533 (D. Md. 2010) (considering spoliation motion before Rule 37(e) amendment). At most, Plaintiffs now can obtain only "scattershot texts and [e-mails]," rather than "a complete record of defendants' written communications from defendants themselves." *First Fin. Sec., Inc. v. Lee*, No. 14-cv-1843, 2016 WL 881003 *5 (D. Minn. Mar. 8, 2016). The Court therefore finds that the missing text messages cannot be replaced or restored by other sources.

The Court now turns to what, if any, sanctions are appropriate for the RMA Defendants' failure to preserve relevant text messages. As set forth above, Rule 37(e) allows the Court two options. If the Court finds that Plaintiffs have suffered prejudice from the RMA Defendants' failure to preserve relevant evidence, the Court may order only those sanctions necessary to cure the prejudice. Fed. R. Civ. P. 37(e)(1). But if the Court finds that the RMA Defendants acted with "intent to deprive" Plaintiffs of the information's use, then the Court may order more severe sanctions, including a presumption the lost information was unfavorable or an instruction to the jury that it may or must presume the missing information was unfavorable. Fed. R. Civ. P. 37(e)(2). As for the violation of the Court's pretrial scheduling order, the Court may issue any "just order[]," including the striking of pleadings, prohibiting the disobedient party from supporting or opposing certain claims, or ordering the payment of costs and fees. Fed. R. Civ. P. 37(b)(2)(A); 37(b)(2)(C). The Court's pretrial scheduling order also puts parties on notice that failure to comply with any provision could result in the assessment of costs and fees or a monetary fine. In this case, the Court finds it appropriate to issue sanctions under both Rules 37(b) and 37(e) and the Court's pretrial scheduling order.

There is no doubt that Plaintiffs are prejudiced by the loss of the text messages. Prejudice exists when spoliation prohibits a party from presenting evidence that is relevant to its underlying case. *Victor Stanley*, 269 F.R.D. at 532. As set forth above, in the Court's discussion regarding their ability to replace or restore the missing information, Plaintiffs are left with an incomplete record of the communications that Defendants had with both each other and third parties. Neither the Court nor Plaintiffs can know what ESI has been

lost or how significant that ESI was to this litigation. The RMA Defendants' claim that no prejudice has occurred is "wholly unconvincing," given that "it is impossible to determine precisely what the destroyed documents contained or how severely the unavailability of these documents might have prejudiced [Plaintiffs'] ability to prove the claims set forth in [their] Complaint." *Telectron, Inc. v. Overhead Door Corp.*, 116 F.R.D. 107, 110 (S.D. Fl. 1987); *see also Multifeeder Tech., Inc. v. British Confectionary Co. Ltd*, No. 09-cv-1090, 2012 WL 4128385 *23 (D. Minn. Apr. 26, 2012) (finding prejudice because Court will never know what ESI was destroyed and because it was undisputed that destroying parties had access to relevant information), *report and recommendation adopted in part and rejected in part by* 2012 WL 4135848 (D. Minn. Sept. 18, 2012). Plaintiffs are now forced to go to already existing discovery and attempt to piece together what information might have been contained in those messages, thereby increasing their costs and expenses. Sanctions are therefore appropriate under Rule 37(e)(1).

Sanctions are also appropriate under Rule 37(e)(2) because the Court finds that the RMA Defendants acted with the intent to deprive Plaintiffs of the evidence. "Intent rarely is proved by direct evidence, and a district court has substantial leeway to determine intent through consideration of circumstantial evidence, witness credibility, motives of the witnesses in a particular case, and other factors." *Morris v. Union Pacific R.R.*, 373 F.3d 896, 901 (8th Cir. 2004). There need not be a "smoking gun" to prove intent. *Auer v. City of Minot*, 896 F.3d 854, 858 (8th Cir. 2018). But there must be evidence of "a serious and specific sort of culpability" regarding the loss of the relevant ESI. *Id.*

Were the missing ESI only the result of Wilson and Staley's failure to disengage the auto-delete function on their phones, then the Court might consider the loss of evidence to be the result of mere negligence. But that is not the case here. As noted previously, Wilson and Staley failed not only to turn off the auto-delete function when they anticipated litigation in February 2017, they also wiped and discarded their phones (twice, in Wilson's case) after Plaintiffs filed suit against RMA and Deliverance. This despite the fact that, as evidenced by the fact that Staley backed up photographs from his phone to his cloud storage space and Dropbox, they knew how to preserve information on their phones and knew that information on their phone might be discoverable. The Court finds from these circumstances alone that the RMA Defendants intentionally destroyed evidence.

The wiping and destruction of Wilson's phone for a second time are perhaps the most egregious or unkindest acts of all. Wilson got rid of his phone in May 2018, after: (1) litigation had commenced; (2) Plaintiffs served discovery; (3) Plaintiffs expressly informed the RMA Defendants that they intended to seek discovery regarding Wilson and Staley's text messages; and (4) the Court ordered the parties to preserve all relevant electronically stored information in its pretrial scheduling order. Any one of these events should have been sufficient to put the RMA Defendants on notice that they needed to preserve their text messages and phones. The Court can draw only one conclusion from this set of circumstances: that they acted with the intent to deprive Plaintiffs from using this information. Rule 37(e)(2) sanctions are particularly appropriate as to Wilson, RMA, and Deliverance for this reason as well.

Finally, sanctions under Rule 37(b) as to Wilson, RMA, and Deliverance are also appropriate because those Defendants violated the Court's pretrial scheduling orders, all of which directed them to preserve electronically stored information. The pretrial scheduling orders also put those Defendants on notice that failure to comply with any provision in those orders might result in a number of sanctions, including an assessment of attorney's fees and costs or a fine. The Court will consider sanctions authorized under these authorities as well.

As to Rule 37(e)(2), Plaintiffs seek the following sanctions: a presumption that the evidence destroyed was unfavorable to the party that destroyed it or, alternatively, an adverse inference instruction. As to Rule 37(e)(1), Plaintiffs seek monetary sanctions and an instruction to the jury that the RMA Defendants had an obligation to preserve the text messages, but failed to do so, making that evidence no longer available. Plaintiffs seek similar sanctions for Rule 37(b), including an instruction to the jury that the RMA Defendants had an obligation to preserve text messages, that they took active steps to destroy those messages, and that as a result, the evidence is no longer available. Plaintiffs also seek their costs and attorney's fees.

The Court believes that Plaintiffs' request for an order presuming the evidence destroyed was unfavorable to the RMA Defendants and/or for an adverse inference instruction may well be justified. But given the fact that discovery is still on-going, the record is not yet closed, and the case is still some time from trial, the Court believes it more appropriate to defer consideration of those sanctions to a later date, closer to trial. *See Monarch Fire Protection Dist. v. Freedom Consulting & Auditing Servs., Inc.*, 644 F.3d

633, 639 (8th Cir. 2011) (holding that it is not an abuse of discretion to defer sanction considerations until trial). At that point, the trial judge will have the benefit of the entire record and supplemental briefing from the parties regarding the parameters of any such instruction or presumption.

The Court will, however, order the RMA Defendants to pay monetary sanctions pursuant to Rules 37(b), and 37(e) and the Court's pretrial scheduling orders. In reaching this decision, the Court notes that neither Rule 37(e)(1) nor 37(e)(2) expressly authorizes the imposition of monetary sanctions. But Rule 37(e)(1) allows the Court to impose any measures necessary to cure the prejudice resulting from spoliation. The range of sanctions available to the Court is "quite broad" and "[m]uch is left to the court's discretion. Fed. R. Civ. P. 37(e), advisory committee's note to 2015 amendment. Many courts have imposed monetary sanctions under Rule 37(e)(1). *See Spencer v. Lunada Bay Boys*, No. 16-cv-2129, 2018 WL 839862 *1 (C.D. Calif. Feb. 12, 2018) (collecting cases). On this basis alone, there is a good argument that the Court could do the same here.

But, given the facts of this case, the conduct of the RMA Defendants is egregious – they willfully and intentionally destroyed discoverable information. Thus, monetary sanctions are available under Rule 37(e)(2). Though that provision contains a list of three different sanctions that may be imposed upon a finding that a party acted with the intent to deprive another of the use of information in litigation, those sanctions do not constitute an exhaustive list of those available to the Court. Instead, the Court may order any remedy that "fit[s] the wrong." Fed. R. Civ. P. 37(e), advisory committee's note to 2015

amendment. Thus, the Court concludes that monetary sanctions are available under this provision of Rule 37.

The Court will therefore order, pursuant to Rules 37(b)(2)(C), 37(e)(1), and 37(e)(2) and the Court's pretrial scheduling orders, the RMA Defendants to pay reasonable expenses, including attorney's fees and costs, that Plaintiffs incurred as a result of the RMA Defendants' misconduct. The Court will order Plaintiffs to file a submission with the Court detailing such expenses and allow the RMA Defendants the opportunity to respond to that submission. In addition, pursuant to Rule 37(e)(2) and the Court's pretrial scheduling order, the Court will also order the RMA Defendants to pay into the Court a fine of $10,000.[3] This amount is due within 90 days of the date of this Order.

### B. Motion to Compel

Plaintiffs also move to compel discovery from Brown. After this motion was briefed and argued, the District Judge issued an order granting Brown's motion to dismiss the claims against it for lack of personal jurisdiction. *See* Order Granting Defendant's Motion to Dismiss, Granting Plaintiffs' Motion to Supplement the Record, and Granting In Part and Denying In Part Plaintiffs' motion to dismiss, *Paisley Park Enterprises, Inc. v. Boxill*, 17-cv-1212, ECF No. 437, p. 12-13. As a result of the District Judge's Order, this Court no longer has jurisdiction to order Brown to respond to Plaintiffs' discovery requests. *See Burnham v. Superior Court of Calif.*, 495 U.S. 604, 607 (1990) (noting judgment of a court

---

[3] Because Staley destroyed his phone before the Court issued its pretrial scheduling order, the Court orders Staley to pay costs, attorney's fees, and the fine pursuant to Rule 37(e)(2).

lacking jurisdiction is void). Accordingly, the Court will deny Plaintiffs' motion to compel as moot.

## III.    CONCLUSION

Therefore, based upon the record, memoranda, and proceedings herein, **IT IS HEREBY ORDERED** as follows:

1. Plaintiffs' Motion for Sanctions Due to Spoliation of Evidence (ECF No. 383) is

**GRANTED IN PART** and **DENIED IN PART** as follows:

> a. Within 21 days of the date of this Order, Plaintiffs shall file a submission with the Court detailing all reasonable fees, costs, and expenses they have incurred as a result of the misconduct of Defendants Rogue Music Alliance, LLC, Deliverance, LLC, David Staley, and Gabriel Solomon Wilson. Within 14 days of that filing, Defendants Rogue Music Alliance, LLC, Deliverance, LLC, David Staley, and Gabriel Solomon Wilson may, if they deem it necessary, file a memorandum in response.

> b. Defendants Rogue Music Alliance, LLC, Deliverance, LLC, David Staley, and Gabriel Solomon Wilson are ordered to pay into the Court a sanction of $10,000. The amount is to be due and payable in full within 90 days of this Order. Defendants Rogue Music Alliance, LLC, Deliverance, LLC, David Staley, and Gabriel Solomon Wilson are jointly and severally liable for this sanction.

> c. Plaintiffs' motion is denied without prejudice in all other respects.

2. Plaintiffs' Motion to Compel Discovery from Defendant Brown & Rosen, LLC (ECF No. 408) is **DENIED AS MOOT.**

3. All prior consistent orders remain in full force and effect.

4. Failure to comply with any provision of this Order or any other prior consistent order shall subject the non-complying party, non-complying counsel and/or the party such counsel represents to any and all appropriate remedies, sanctions and the like, including

without limitation: assessment of costs, fines and attorneys' fees and disbursements; waiver of rights to object; exclusion or limitation of witnesses, testimony, exhibits, and other evidence; striking of pleadings; complete or partial dismissal with prejudice; entry of whole or partial default judgment; and/or any other relief that this Court may from time to time deem appropriate.

Date: March 4, 2019

_____s/ Tony N. Leung_____
Tony N. Leung
United States Magistrate Judge
District of Minnesota

*Paisley Park Enterprises, Inc., et al. v. Boxill, et al.*

Case No. 17-cv-1212 (WMW/TNL)